OPINION
{¶ 1} Defendant-appellant, Brian K. Merriman, appeals from convictions of: (1) attempted murder with a firearm specification in violation of R.C. 2923.02, a felony in the first degree; (2) kidnapping, with a firearm specification, in violation of R.C. 2905.01, a felony in the first degree; and (3) carrying a concealed weapon in violation of R.C.2923.12, a felony in the fourth degree. Because the evidence supports defendant's convictions, we affirm.
 {¶ 2} During September 2002, Odale Collins was living at 969 Atcheson Avenue in Columbus, Ohio. Gary Woods, Collins' friend, was living at 963 Atcheson, just a few townhouses from Collins. At around 11:00 p.m. on September 24, 2002, Collins and Woods went to a bar within a five-minute walking distance of both 969 and 963 Atcheson. Defendant was at the bar with another man at this same time.
 {¶ 3} While they were at the bar, Collins and Woods got into an argument with defendant. Defendant testified that during this argument Woods said he was going to shoot defendant because defendant did not belong at the bar. Thereupon, the parties exchanged confrontational words. The bartender asked all of the parties to leave the bar. Collins and Woods walked back to their respective townhouses on Atcheson.
 {¶ 4} Approximately a half an hour to an hour after Collins arrived home, he heard a loud "boom" and went outside to investigate. Upon stepping outside his door, Collins was shot in the head two times. As Collins staggered down the sidewalk toward the parking lot, he saw a truck pull up and defendant get out of the truck. Collins testified that defendant was holding a black semi-automatic gun and that he asked Collins, "What's going on? Where your brother at?" Collins testified that defendant then shot him in the chest causing Collins to black out. Collins regained consciousness in time to see defendant lean over him and shoot him in the chin. During this last encounter, Collins noticed that defendant had two different colored eyes. Collins also recalled spitting out the bullet and his gold teeth after the last shot. Collins then became unconscious.
 {¶ 5} Sometime after returning from the bar with Collins, Woods heard gunshots outside his townhouse at 963 Atcheson. Looking out the back window of his townhouse, Woods saw a dark SUV-like vehicle with darkened headlights speeding out of the parking lot and a police car chasing the SUV. Woods later identified defendant as the person he and Collins had the confrontation with at the bar both the night of the shooting and in a photographic line-up later presented to him by Detective Rankin. Woods also noticed on the night of the shooting that defendant had two different colored eyes.
 {¶ 6} Nathaniel Matthews lived at 939 Atcheson. He testified that on the night of September 25, 2002, he also head gunshots and saw what looked to be a Chevy Blazer similar to the one in the State's photographs pulling out of the parking lot at a fast rate of speed. The vehicle hit a street sign and made a right onto Atcheson. Matthews saw Collins lying on the ground and called the police.
 {¶ 7} On the night of the shooting, Officer Andrew Ross was on duty in a marked patrol car. At around 1:50 a.m. on the morning of September 25, 2002, he heard gunshots while patrolling the area around Atcheson Avenue. Officer Ross then saw a large black SUV with darkened headlights pull out of the parking lot where Collins had been shot and turn right onto Atcheson Avenue. Officer Ross immediately began following the SUV.
 {¶ 8} After a chase, two police cars trapped the SUV in an alley. Two people emerged from the SUV and began running away. Officer Beavers, an officer in one of the cars that had trapped the SUV, caught and arrested defendant. Upon arresting defendant, Officer Beavers inspected the SUV and discovered two guns. Officer Beavers had heard over the police radio that the suspect in the Atcheson Avenue shooting had two different colored eyes. Thereupon, Officer Beavers shined a flashlight into defendant's eyes and noticed defendant had two different colored eyes.
 {¶ 9} Immediately after defendant was arrested, Detective Michael Madry performed a gunshot residue collection on defendant and took photographs of both the crime scene and the SUV. Ted Manasian, a forensic scientist for the Ohio Bureau of Criminal Investigation, performed analysis of these gunshot residue samples and determined that particles containing lead, barium, and antimony were present on defendant's hands. Manasian testified this combination is highly indicative of gunshot primer residue and that it was likely defendant had either held or been in the presence of a gun that evening.
 {¶ 10} As a result of the shooting, Collins remained unconscious for two weeks. He was hospitalized from September 25, 2002 until November 5, 2002. Upon regaining consciousness, Collins gave Detective Rankin a description of his shooter from that night. Collins told Detective Rankin that the shooter was about 6'3", light-skinned, had short hair, and facial hair. Collins also told Detective Rankin that the shooter had two different colored eyes.
 {¶ 11} Detective Rankin then presented a photographic line-up to Collins containing photos of six different people. All six people in the line-up were African-American males with light-skin, short hair, and facial hair. The computer that generated the line-up placed these individuals in a random order in the line-up. Collins wrote on the back of the sixth photo that the person in that photo was the person who shot him on the night of September 25, 2002. The person in the sixth picture was defendant. Collins testified that Detective Rankin did not suggest to Collins which person he should pick, if any, from the line-up.
 {¶ 12} Defendant was indicted on October 28, 2002 for one count of carrying a concealed weapon. On March 13, 2003, defendant was also indicted for one count of attempted murder with a firearm specification and one count of kidnapping with a firearm specification. The two cases were joined and tried before a jury. Before the jury trial, defendant filed a motion to suppress Collins' identification of him. Following a hearing before the judge, the trial court overruled defendant's motion.
 {¶ 13} The jury found defendant guilty of all three counts. The trial court merged the kidnapping count with the attempted murder count and sentenced defendant to seven years incarceration for the attempted murder with an additional three years to be served consecutively for the firearm specification. The trial court also sentenced defendant to 12 months incarceration for carrying a concealed weapon to be served concurrently with his sentence for attempted murder. Defendant now appeals these convictions.
 {¶ 14} On appeal, defendant assigns the following errors:
I. THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION AND ERROR IN OVERRULING APPELLANT'S MOTION TO SUPPRESS IDENTIFICATION OF APPELLANT.
II. THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT OF CONVICTION AGAINST THE APPELLANT WHEN THE EVIDENCE PRESENTED TO THE JURY WAS INSUFFICIENT TO SUSTAIN A CONVICTION AND JURY VERDICT OF CONVICTION WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 15} By his first assignment of error, defendant argues that the trial court erred in denying his motion to suppress identification. Specifically, defendant argues that the testimony given by Collins failed to meet the factors set forth in Neil v. Biggers (1972), 409 U.S. 188, 199,93 S.Ct. 375, that prove a defendant was properly identified. We disagree.
 {¶ 16} In order to determine the admissibility of a pretrial identification of a suspect by a witness, a court must engage in a two-step analysis. Id. at 196-197. First, a court must determine whether the identification procedure was impermissibly suggestive. Second, if the procedure was impermissibly suggestive, then a court must determine if there was a "substantial likelihood of irreparable misidentification." Id. A defendant has the burden of proving that the identification procedures were suggestive and the resulting identification was unreliable. State v. Green (1996), 117 Ohio App.3d 644, 652-653. If the defendant fails to satisfy the first burden, then the court need not address whether there was a "substantial likelihood of irreparable misidentification." Id. at 653.
 {¶ 17} Whether an identification was suggestive depends on factors such as the size of the array, the manner in which the array is presented, and the contents of the array. Reese v. Fulcomer (C.A.3, 1991), 946 F.2d 247, 260. A photo array is suggestive if the "picture of the accused, matching the descriptions given by the witness, so stood out from all of the other photographs as to `suggest to an identifying witness that [that person] was more likely to be the culprit.'" Jarrettv. Headly (C.A.2, 1986), 802 F.2d 34, 41.
 {¶ 18} Defendant failed to argue that the photo array was suggestive in terms of size, manner, or content. Even if defendant had raised these arguments, we would disagree. The photo array given to Collins contained six computer-generated photographs of African-American males all with similar features including short hair and facial hair. Detective Rankin, upon showing the photos to Collins, made no suggestion to Collins regarding whom he should pick out of the photo array. Therefore, the photo array was not suggestive as to the identification of defendant.
 {¶ 19} However, even assuming that the photo array was suggestive in some manner, defendant has failed to prove that there was a "substantial likelihood of irreparable misidentification." Even if the identification procedure utilized is suggestive, as long as the identification itself is otherwise reliable, the identification is admissible. Neil at 199. The Supreme Court has held that in order to determine whether identification is reliable, a court must look at the totality of the circumstances surrounding the identification. Id. The totality of the circumstances includes examining:
the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.
Id.
 {¶ 20} Here, the totality of the circumstances indicates the identification was reliable. Defendant first argues that Collins did not have an adequate opportunity to observe the person who shot him, and only identified the defendant as the shooter because he saw defendant at the bar that night. Defendant is mistaken. Collins identified defendant as the shooter by writing across his photograph, "he shot me." Collins testified that defendant came within a few feet of his face before shooting him in the chin. Collins had a clear view of defendant at that time. Although Collins had already been shot at this point, he was aware enough to notice specific details about defendant, including the fact that defendant had two different colored eyes. Further, Collins testified that he recognized defendant from the bar, but based his identification upon seeing defendant as his shooter.
 {¶ 21} Defendant's second argument is that Collins admitted on cross-examination that he was only concerned with identifying one person because of what Detective Rankin told him. Again, defendant distorts Collins' testimony. Collins testified he was only concerned with identifying the person who shot him, not that he was only concerned with identifying one person. Because Collins testified he only saw one person at the time of the shooting, there was no way Collins could identify two people even if Detective Rankin had told him to identify only one person.
 {¶ 22} Accordingly, Collins' identification clearly meets the Neil
standard because the identification was neither suggestive nor unreliable, and defendant's first assignment of error is overruled.
 {¶ 23} By his second assignment of error, defendant contends his convictions for kidnapping and attempted murder were not supported by sufficient evidence and were against the manifest weight of the evidence.
 {¶ 24} "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different."State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus. Therefore, we will discuss each standard separately.
 {¶ 25} In State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, the Supreme Court of Ohio set forth the role of an appellate court when reviewing a sufficiency of the evidence argument:
An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 {¶ 26} Whether the evidence is legally sufficient is a question of law, not fact. Thompkins at 386. In determining the sufficiency of the evidence, an appellate court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson v. Virginia (1979), 443 U.S. 307, 319,99 S.Ct. 2781. Consequently, the weight of the evidence and the credibility of the witnesses are issues primarily determined by the trier of fact. State v. Yarbrough, 95 Ohio St.3d 227, 2002-Ohio-2126, at ¶79; State v. Thomas (1982), 70 Ohio St.2d 79, 80. The appellate court will not overturn a jury verdict unless, after viewing the evidence in the light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. State v. Treesh (2001), 90 Ohio St.3d 460, 484; Jenks at 273.
 {¶ 27} In order to convict a defendant of attempted murder, a trier of fact must find that the state has proven beyond a reasonable doubt that the defendant purposely or knowingly engaged in conduct that, if successful, would have resulted in the death of another. R.C. 2923.02(A). To convict a defendant of kidnapping, the state must prove beyond a reasonable doubt that the defendant restrained the liberty of another to facilitate the commission of a felony. R.C. 2905.01(A)(2).
 {¶ 28} Defendant contends that Collins' eyewitness identification of the defendant was not sufficient to prove defendant shot Collins. However, because we do not weigh the witness' credibility when reviewing sufficiency of the evidence, defendant's argument fails. Collins testified unequivocally that he saw defendant only a few feet from his face as defendant shot him in the chin. After regaining consciousness two weeks after the incident, Collins was able to communicate to the investigating officers what his shooter looked like. Collins picked defendant from a photo array of six different people and wrote on defendant's photo that this was the man that shot him. Viewing Collins' testimony in a light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that defendant was the perpetrator the night of September 25, 2002. Accordingly, defendant's convictions for kidnapping and attempted murder were supported by sufficient evidence.
 {¶ 29} By his second assignment of error, defendant also argues that his conviction was against the manifest weight of the evidence. In order for an appeals court to reverse a trial court judgment on the basis that the verdict is against the manifest weight of the evidence, the appellate court must disagree with the fact finder's resolution of the conflicting testimony. Thompkins at 387. The court must review the entire record, weigh the evidence and reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way creating a miscarriage of justice that warrants a reversal and a new trial. Id. A reversal should only be granted for the most "exceptional case in which the evidence weighs heavily against the conviction." Id.
 {¶ 30} A defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial.State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, ¶ 21. The trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible. State v.Williams, Franklin App. No. 02AP3-5, 2002-Ohio-4503, at ¶ 58; State v.Clarke (Sept. 25, 2001), Franklin App. No. 01AP1-94. Consequently, although an appellate court must act as a "thirteenth juror" when considering whether the manifest weight of the evidence requires reversal, it must also give great deference to the fact finder's determination of the witnesses' credibility. State v. Covington, Franklin App. No. 02AP-245, 2002-Ohio-7037, ¶ 28; State v. Hairston, Franklin App. No. 01AP-1393, 2002-Ohio-4491, ¶ 74.
 {¶ 31} Defendant argues that the verdict is against the manifest weight of the evidence because Collins is the only witness who identified defendant as the perpetrator. Defendant contends that this testimony does not support a conviction because Collins had already been shot twice before seeing defendant, that he was in and out of consciousness during this time, and finally that Collins now suffers both brain damage and memory loss making his testimony non-credible. Again, we disagree.
 {¶ 32} Like the jury, we find Collins credible because he gave a detailed, consistent description of the defendant and shooting. Further, other witnesses' testimony was consistent with Collins' testimony. Woods and Officer Ross also testified that they saw a dark SUV pulling out of the Atcheson Avenue parking lot at the time of the shooting. Officer Ross testified that defendant was one of the men who eventually exited that SUV after being trapped in an alley. Woods and Officer Beavers both testified that the defendant had two different colored eyes that evening.
 {¶ 33} Accordingly, we do not conclude, as defendant urges, that the only evidence to support the conviction came from the testimony of the victim. Rather, after reviewing the record in its entirety, we find the jury did not clearly lose its way when it convicted defendant of attempted murder and kidnapping. Having found all these convictions supported by sufficient evidence and not against the manifest weight of the evidence, we overrule defendant's second assignment of error.
 {¶ 34} For the foregoing reasons, we overrule both of appellant's assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Brown, P.J., and Sadler, J., concur.