OPINION
{¶ 1} Defendant-appellant, Nikko Tanksley, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of aggravated robbery and robbery, each with firearm specifications. Because the trial court did not err in admitting the victim's identification evidence or in failing to charge the jury on duress, we affirm.
 {¶ 2} According to the state's evidence, Nassir Abdi and his 12-year-old daughter were robbed at gunpoint on July 26, 2006 when Abdi was picking his daughter up from an apartment complex. The robbery began when a red sport utility vehicle ("SUV") pulled in *Page 2 
next to Abdi's car in the parking lot. The driver of the SUV asked Abdi for directions. When Abdi responded, the five occupants of the SUV exited the vehicle simultaneously and so smoothly they looked like they received "training for that mission." (Tr. 55.) The robbers seized Abdi and his daughter. Abdi described one robber, who was holding a rifle, as light-skinned with braided hair. After taking Abdi's wallet, between $700 and $800 from his pocket, and a cell phone from the car, the robbers told Abdi and his daughter to get back inside his car and to stay there. The robbers then fled in their vehicle.
 {¶ 3} Contrary to the instructions, Abdi did not stay where he was, but followed the robbers to a nearby gas station and then followed again as the robbers began to leave the area. Using a cell phone the robbers did not take, Abdi called 911 and informed the operator of the robbery and the location of the robbers. Police units soon responded, and the robbers were pulled over.
 {¶ 4} Inside the SUV, police found credit cards and other personal property belonging to Abdi. Defendant was found sitting in the SUV's rear seat. The rifle used in the robbery was discovered directly behind that seat, and one of the credit cards was found lying on the floor in front of defendant's seat. Abdi was present at the scene when the police arrested the robbers, and he was able to identify each one at that time. He told the arresting officers that during the robbery, defendant, while holding the gun, pulled Abdi from Abdi's car. After defendant was transported to jail, $639 was found in his shoe.
 {¶ 5} By indictment filed October 17, 2006, defendant was charged with two counts of aggravated robbery in violation of R.C. 2911.01, four counts of robbery in violation of R.C. 2911.02, and one count of improperly handling a firearm in a motor vehicle in violation of R.C.2923.16; all carried a firearm specification. One count of *Page 3 
aggravated robbery, three counts of robbery, and the improper handling of a firearm charge later were dismissed. Pursuant to a jury trial in December 2006, defendant was found guilty of one count of aggravated robbery and one count of robbery, each with a firearm specification. The trial court sentenced defendant accordingly. Defendant timely appeals, assigning four errors:
 ASSIGNMENT OF ERROR ONE
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND DEPRIVED DEFENDANT-APPELLANT OF DUE PROCESS OF LAW BY ENTERING A JUDGMENT OF CONVICTION AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW.
 ASSIGNMENT OF ERROR TWO
 THE TRIAL COURT COMMITTED PLAIN ERROR AND DEPRIVED DEFENDANT-APPELLANT OF SUBSTANTIVE RIGHTS UNDER CRIMINAL RULE 52 BY FAILING TO GIVE A CHARGE OF DURESS IN THE JURY INSTRUCTIONS.
 ASSIGNMENT OF ERROR THREE
 THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED PREJUDICIAL ERROR BY ADMITTING EVIDENCE OF AN UNRELIABLE IDENTIFICATION.
 ASSIGNMENT OF ERROR FOUR
 DEFENDANT-APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10, OF THE OHIO CONSTITUTION.
I. First and Third Assignments of Error {¶ 6} Because defendant's first and third assignments of error both concern Abdi's identifying defendant as the gunman during the robbery, we address them *Page 4 
together. Defendant's third assignment of error contends the trial court erred in admitting Abdi's identification evidence because Abdi's inconsistent testimony rendered the identification unreliable. His first assignment of error asserts his conviction is against the manifest weight of the evidence because Abdi's conflicting testimony left the state unable to prove defendant was the gunman.
 {¶ 7} When considering whether to admit identification evidence, the trial court utilizes a two-step analysis. Neil v. Biggers (1972),409 U.S. 188, 199-200. The trial court initially determines whether the identification procedure was impermissibly suggestive. Id. at 196-197. If the procedure was impermissibly suggestive, the trial court next must determine if the identification was reliable despite its suggestive character. Id. at 199. In determining the reliability of the identification, the court considers factors such as "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Neil, supra, at 199-200; Manson v. Brathwaite (1977),432 U.S. 98, 114. "Against these factors is to be weighed the corrupting effect of the suggestive identification itself." Manson, supra.
 {¶ 8} Generally, a defendant has the burden of proving both an identification procedure was impermissibly suggestive and the identification was unreliable. See State v. Albert, Franklin App. No. 06AP-439, 2006-Ohio-6902, at ¶ 45, citing State v. Merriman, Franklin App. No. 04AP-463, 2005-Ohio-3376, at ¶ 16. If the defendant fails to prove that the identification procedures were suggestive, then the trial court need not address whether the identification was unreliable.Merriman, supra, citing State v. Green (1996), *Page 5 117 Ohio App.3d 644, 653. If, however, a defendant successfully establishes the identification procedure was impermissibly suggestive and the identification was unreliable, due process requires a trial court not admit evidence of a witness' prior identification of the defendant. State v. Murphy (2001), 91 Ohio St.3d 516, 534.
 {¶ 9} Here, Abdi identified defendant in a one-person "show up," or "cold stand," an identification procedure where the victim, in a relatively short time after the incident, is shown only one person and is asked whether the victim can identify the perpetrator of the crime. See State v. Patton, Cuyahoga App. No. 88199, 2007-Ohio-990, at ¶ 17. Although a one-person "show up" identification procedure is in general "inherently suggestive," identification from such a "show up" is admissible if the identification is reliable. State v. Parrish, Montgomery App. No. 21206, 2006-Ohio-4161, at ¶ 15, citing State v.Moody (1978), 55 Ohio St.2d 64, and State v. Sherls (Feb. 22, 2002), Montgomery App. No. 18599.
 {¶ 10} The "show up" in this case differs from the usual. Here, the victim led the police to the suspects, remaining in visual contact with the robbers as they drove away from the crime scene, save for a short interval of less than one minute. Under such circumstances, the "show up" was not inherently suggestive. Since the first prong of the two-partNeil test was not fulfilled, the trial court did not need to consider whether the identification was reliable; the identification evidence could be admitted simply on that basis. See Merriman, supra.
 {¶ 11} Even if the "show up" were inherently suggestive, the totality of the circumstances demonstrates the identification was reliable. Four of the five factors set forth in Neil to determine the likelihood of misidentification favor the accuracy of Abdi's *Page 6 
identifying defendant as the gunman. Abdi had ample opportunity to view defendant during the robbery: defendant and another man held Abdi as a third pilfered his car. While Abdi testified "there was not enough time that I can watch those who were handling me, who was catching me, and those who was catching my daughter," the circumstances led to "confusion" only about the identification of those who held his daughter, not about the men who held him. (Tr. 54.) As to the suspects who restrained Abdi and went through his car, Abdi testified, "[t]hat three, I can tell like 95 percentage who and who and who." (Tr. 54.) Lighting was also not an issue, as Abdi testified that light posts, the nearest of which "was close up to" the crime scene, lit the parking lot where the robbery took place. (Tr. 59.) Such testimony indicates that Abdi had plenty of opportunity to view defendant at the time of the crime.
 {¶ 12} Abdi was also attentive during the robbery, as the details he remembered about the robbers demonstrated. Although he did not get a good look at the faces of the robbers, he testified he was able to identify them to the police based on "[a]s much as I could remember their faces, their body, physically how they were looks like [sic], like the one who has the gun has braid hairs." (Tr. 52.)
 {¶ 13} In addition, Abdi expressed a high degree of certainty in identifying the robbers on the night of the robbery, although he admitted at trial he was no longer sure he could identify them. Abdi testified that on the night of the robbery he was 95 percent sure which robber carried the gun, an assertion supported in the testimony of Detective Gary Bowman, who interviewed Abdi on the night of the robbery. Bowman testified that when Abdi identified defendant as the gunman, "[h]e was very certain. There was no hesitation in his identification. He pointed his finger and said, `That's the gunman right there. He's *Page 7 
the one that robbed me.'" (Tr. 179.) Finally, the identification of defendant as the gunman occurred only about 90 minutes after the robbery, during which Abdi remained in visual contact with the suspects save for a brief interval lasting at most one minute.
 {¶ 14} The only question concerning Abdi's identification arises from a statement made during Abdi's trial testimony that is inconsistent with his statement on the night of the incident. At trial, he identified the driver of the robbers' car as the gunman, while his prior statement described defendant, who was not the driver, as the gunman. Although his testimony may raise some concern about the accuracy of Abdi's description of defendant as the gunman, the totality of the circumstances fails to support defendant's contention that the identification was unreliable. Since the "show up" was not impermissibly suggestive, and because the totality of the circumstances support the reliability of the identification, the trial court did not err in admitting Abdi's "show up" identification of defendant as the gunman. Defendant's third assignment of error is overruled.
 {¶ 15} Defendant next contends that even if Abdi's identification was not impermissibly suggestive and unreliable, Abdi's testimony so varied from his statement to police that defendant's convictions are against the manifest weight of the evidence.
 {¶ 16} When presented with a manifest weight argument, we engage in a limited weighing of the evidence to determine whether sufficient competent, credible evidence supports the jury's verdict to permit reasonable minds to find guilt beyond a reasonable doubt. State v.Conley (Dec. 16, 1993), Franklin App. No. 93AP-387; State v.Thompkins (1997), 78 Ohio St.3d 380, 387 (stating that "[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, *Page 8 
the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of conflicting testimony"). The court, reviewing the entire record, determines whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thompkins, supra. Determinations of credibility and weight of the testimony remain within the province of the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Reversals of convictions as being against the manifest weight of the evidence are reserved for cases where the evidence weighs heavily in favor of the defendant. State v. Otten
(1986), 33 Ohio App.3d 339, 340.
 {¶ 17} The inconsistencies in Abdi's testimony are insufficient to support defendant's contention. While Abdi identified defendant as the gunman on the night of the robbery, at trial he testified the SUV driver was the gunman. According to Abdi's testimony, the driver at the time of the robbery was also driving the vehicle when the police pulled the robbers over; that individual was not defendant. Abdi, however, also testified the gunman had braided hair and was light-skinned, both characteristics that uniquely identify defendant. Moreover, the arresting officers testified that Abdi identified defendant as the gunman on the night of the robbery. While the state's identification evidence was not entirely consistent, the jury was charged with the responsibility to determine the credibility and weight of the evidence. From this record, we cannot say the jury so lost its way in resolving the credibility issues as to render its verdict against the manifest weight of the evidence. Defendant's first assignment of error is overruled. *Page 9 
II. Second and Fourth Assignments of Error {¶ 18} Because defendant's second and fourth assignments of error are related, we discuss them together. In his second assignment of error, defendant contends the trial court erred by failing to instruct the jury on the affirmative defense of duress, while his fourth assignment of error argues he was denied effective assistance of counsel because his trial counsel neither asserted duress as an affirmative defense nor objected when the trial court failed to include a duress charge in the jury instructions.
 {¶ 19} Because defendant did not request an instruction on duress and did not object when the trial court failed to include a duress charge in the jury instructions, he waived all but plain error in his second assignment of error. State v. Locklear, Franklin App. No. 06AP-259,2006-Ohio-5949, at ¶ 25. See, also, Crim.R. 52(B). Even if a forfeited error satisfies the requirements of Crim.R. 52(B), "Crim.R. 52(B) does not demand that an appellate court correct it." Id. Rather, "Crim.R. 52(B) states only that a reviewing court `may' notice plain forfeited errors; a court is not obliged to correct them." Id. The Ohio Supreme Court "acknowledged the discretionary aspect of Crim.R. 52(B) by admonishing courts to notice plain error `with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" Id., quoting State v. Barnes (2002), 94 Ohio St.3d 21, 27, quoting State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
 {¶ 20} One of the essential features of the defense of duress is the sense of immediate, imminent death or serious bodily injury if the actor does not commit the act as instructed. State v. Shirk (Nov. 4, 1997), Franklin App. No. 97APA03-390; see, also, State v. Cross (1979),58 Ohio St.2d 482. The force used to compel the actor's conduct must *Page 10 
remain constant, control the will of the unwilling actor during the entire time he commits the act, and be of such a nature that the actor cannot safely withdraw. See State v. Good (1960), 110 Ohio App. 415.
 {¶ 21} The evidence in the record does not support defendant's claim of duress. Defendant contends he acted under duress because he feared Antwuan Hunter, the driver of the robbers' vehicle. He testified he initially "denied it all" when the police questioned him because "I was afraid that if I would tell on Antwuan that I don't know what might have happened to me, you know. I was feared for my life, and I was feared for my family's life because * * * [h]e just pulled a shotgun out on a man and a woman for no reason. What would he do to me if I told the police what he did?" (Tr. 217-218.)
 {¶ 22} Although defendant's statements may explain that defendant's actions after the traffic stop resulted from duress, his convictions arise not out of what he did after the police pulled over the suspects, but out of his actions during the robbery itself. He offered no evidence that his actions during the robbery resulted from duress; nor could he, as he denied any participation in the robbery. Likewise, defendant's testimony that Hunter was "crazy" and "brazen" in pumping gas at a nearby gas station just minutes after the robbery fails to show that at the time of the robbery defendant was acting under duress due to his fear of Hunter. (Tr. 214.) Since his defense strategy at trial was to argue that he was innocently present at the robbery but refused to participate, the record presents no basis to support his claim of duress. Accordingly, the trial court did not err in failing to include a duress instruction in the jury charge. Defendant's second assignment of error is overruled. *Page 11 
 {¶ 23} Similarly, defendant's claim that his trial counsel was ineffective is without merit. To prove ineffective assistance of counsel, defendant first must demonstrate that counsel's performance was deficient. Strickland v. Washington (1984), 466 U.S. 668, 687. To meet the requirement, defendant must initially show counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Id. The defendant next must demonstrate the deficient performance prejudiced the defense. Id. As the affirmative defense of duress was not available to defendant on the evidence presented at trial, trial counsel was not ineffective for failing to request it. Defendant's fourth assignment of error is overruled.
 {¶ 24} Having overturned defendant's four assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
 SADLER, P.J., and McGRATH, J., concur. *Page 1