OPINION
{¶ 1} Defendant-appellant, Christie Messer-Tomak, appeals from a judgment of the Franklin County Court of Common Pleas finding her guilty of felonious assault and aggravated rioting. Because the sufficiency and manifest weight of the evidence support defendant's convictions, and because her trial counsel was not ineffective, we affirm.
 {¶ 2} Defendant's convictions result from an assault on Trisha Lehmann ("Lehmann") on the front porch of Lehmann's home on July 19, 2005. The assault was *Page 2 
the culmination of a day long series of clashes between defendant's and Lehmann's daughters. The conflict began a few days earlier with a prank phone call a group of middle school cheerleaders placed during an overnight outing at their coach's house. One of the cheerleaders was Lehmann's daughter Taylor, and the victim of the prank was defendant's daughter Samantha. On the morning of July 19, a fight broke out between Taylor and defendant's daughter Danielle, as Danielle suspected Taylor made the call. Danielle initially slapped Taylor and Taylor's friend. Danielle and a friend then chased the other two girls on bicycles, resulting in a fight. Police called to the scene took Taylor and her friend to Lehmann's house. The officer and Lehmann then went to defendant's house in an attempt to resolve the situation, but defendant was at her place of employment.
 {¶ 3} That afternoon, while defendant was still at work, another clash broke out between defendant's daughters and two friends of Lehmann's daughters. Lehmann, along with Taylor, Taylor's sister Jessica, and an adult friend went to the scene. The parties disagree about what occurred there, but the fight broke up when mace was sprayed into the air. Lehmann, her daughters and friend departed without further incident.
 {¶ 4} Defendant contends that once she arrived home from work, she went with her daughters, Danielle and Jessica, to Lehmann's residence in order to discuss the situation. According to Jessica, defendant was maced while talking to Lehmann. Lehmann, however, maintains that, at that time, she was picking up her youngest daughter at the airport; on their way home they stopped at the office of Lehmann's husband Sean.
 {¶ 5} The parties agree, however, that later that evening two carloads of people pulled up in front of Lehmann's house. Lehmann and various members of her family were *Page 3 
on the porch. Sensing trouble, they attempted to flee inside the house; Lehmann was the only one who was unable to gain entrance. While she was on the porch, she was severely beaten, suffering a broken nose, fractured cheekbone and wrist, a concussion, black eyes and bruises. The parties agree that the attackers included defendant's daughter Jessica Tomak and defendant's nephew Robert Tomak; defendant's involvement is disputed.
 {¶ 6} Defendant was indicted on one count of felonious assault, in violation of R.C. 2903.11 and one count of aggravated rioting, in violation of R.C. 2917.02. After a jury trial, defendant was found guilty of both charges. The trial court sentenced her to five years on the assault charge and 18 months for aggravated rioting, with the sentences to be served concurrently. Defendant appeals, assigning the following errors:
 First Assignment of Error: The evidence was legally insufficient to support appellant's convictions for felonious assault and aggravated riot.
 Second Assignment of Error: The court erroneously overruled appellant's motion for acquittal pursuant to Criminal Rule 29.
 Third Assignment of Error: Appellant's convictions were against the manifest weight of the evidence.
 Fourth Assignment of Error: Appellant was denied the effective assistance of counsel as guaranteed by the U.S. and Ohio Constitutions due to counsel's failure to file a pre-trial motion to suppress identification, making inappropriate comments such as commending the detective on his investigation, and by his failure to renew a Rule 29 motion at the close of appellant's case.
I. First and Second Assignments of Error {¶ 7} Because defendant's first two assignments of error are analyzed under the same standard, we discuss them together. In her first assignment of error, defendant *Page 4 
asserts the evidence presented at trial was legally insufficient to support her convictions. Generally, a review of the sufficiency of the evidence is a question of law. State v. Thompkins (1997),78 Ohio St.3d 380, 386. We construe the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus; State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387.
 {¶ 8} Defendant's second assignment of error contends the trial court erred in overruling her Crim. R. 29 motion for acquittal. Crim. R. 29(A) provides that the court "on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." Review of a denied Crim. R. 29 motion and of the sufficiency of the evidence apply the same standard. State v. Turner, Franklin App. No. 04AP-364, 2004-Ohio-6609, citing State v. Ready (2001),143 Ohio App.3d 748.
 {¶ 9} Defendant's appeal hinges upon whether defendant was present at the scene of the assault. Defendant contends that even though some of the prosecution witnesses testified they saw defendant at the scene, the state nonetheless failed to provide sufficient evidence to support her convictions. Contrary to defendant's contentions, the state presented adequate evidence, if believed, to enable a rational trier of fact to find the essential elements of the crimes proven beyond a reasonable doubt.
 {¶ 10} As relevant here, R.C. 2903.11 defines felonious assault as knowingly causing serious physical harm to another. In proscribing aggravated rioting, R.C. 2917.02 *Page 5 
prohibits a person from participating with four or more others in a course of disorderly conduct with, as charged here, the purpose to commit or facilitate any offense of violence.
 {¶ 11} The testimony of both Chris Messer and Debra Hunt identified defendant as a participant. Messer knew defendant and her family from the neighborhood and school. From photo arrays and at trial, he identified defendant, along with Jessica Tomak and Robert Tomak, as among the approximately eight to ten people who were involved in the assault. Messer specifically testified defendant drove the lead car, reached the porch first, and initiated the assault by punching Lehmann with a closed fist, even though Lehmann did nothing to provoke defendant.
 {¶ 12} Hunt lived several houses down the street from the Lehmann family, but did not know them when the assault occurred. Although she did not directly see the attack on Lehmann, from her porch Hunt saw flower pots being thrown at Lehmann's house. She testified that three or four people were involved in the attack, including both men and women. After beating Lehmann, the attackers drove past Hunt as they fled. Hunt later identified defendant and Robert Tomak from photo arrays; she also identified defendant in court.
 {¶ 13} If believed, the testimony of Messer and Hunt, collectively placing defendant at the scene and initiating the attack, provided sufficient evidence supporting defendant's convictions. As to the felonious assault conviction, they collectively testified defendant was present and instigated the attack that resulted in serious harm. Defendant's role both as lead driver and the one who initiated the assault, coupled with Messer's testimony that eight to ten people participated in the attack, provides sufficient evidence to support defendant's conviction for aggravated rioting. *Page 6 
 {¶ 14} Defendant urges us to discount Hunt's testimony because of the distance between her residence and the scene of the attack. Defendant's argument, however, like other evidence defendant points to, relates not to the sufficiency of the evidence, but to its weight. Because the state's witnesses, if believed, presented sufficient evidence to support defendant's convictions, the trial court properly overruled defendant's Crim. R. 29 motion. Defendant's first and second assignments of error are overruled.
II. Third Assignment of Error {¶ 15} Defendant next contends her convictions are against the manifest weight of the evidence. She asserts the state failed to present the necessary credible evidence to establish her guilt beyond a reasonable doubt. In support, defendant again argues the state's witnesses identifying her at the crime scene were unreliable, especially in light of defense witnesses who testified she was not present at the time of the crime.
 {¶ 16} When presented with a manifest weight argument, we engage in a limited weighing of the evidence to determine whether sufficient competent, credible evidence supports the jury's verdict to permit reasonable minds to find guilt beyond a reasonable doubt. State v.Tanksley, Franklin App. No. 07AP-262, 2007-Ohio-6596, citingConley, supra; Thompkins, at 387 (stating that "[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony"). The court, reviewing the entire record, determines whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thompkins, supra. Determinations of credibility and weight of the testimony remain within the province of the trier of fact. *Page 7 State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Reversals of convictions as being against the manifest weight of the evidence are reserved for cases where the evidence weighs heavily in favor of the defendant. State v. Otten (1986), 33 Ohio App.3d 339,340.
 {¶ 17} In response to the testimony of the state's witnesses placing her at the scene and identifying her as the assailant, defendant notes three persons who were at the scene were unable to identify her from a photo array, and the fourth, Hunt, observed the assault from 120 feet away. To further advance her defense, defendant also offered an alibi, presenting three witnesses who testified she was not at the scene when the attack occurred.
 {¶ 18} As defendant properly notes, Lehmann, Sean Lehmann and Jessica Tripp failed to identify defendant from a photo array. At trial, however, Lehmann identified defendant as one of her assailants. She stated she could remember faces but was not able to identify photographs, explaining she was unable to identify any of her attackers from the photo arrays. Lehmann nonetheless was emphatic her initial assailant was a woman in her mid-thirties, or about Lehmann's own age. Although Sean Lehmann and Jessica Tripp were unable to identify defendant from a photo array, neither testified at trial. Moreover, despite her distance from the assault, Hunt testified she had a clear view from her house to the Lehmann residence, and she saw the assailants drive past her house as they fled. She added that all the attackers were Caucasian, a fact Messer corroborated.
 {¶ 19} To counter the state's evidence, defendant offered the testimony of Robert and Jessica Tomak. Each testified the attack was his or her idea, and defendant was *Page 8 
neither present nor knew of the plans to retaliate against the Lehmanns. Both Robert and Jessica stated they were the only members of their family participating in the attack, with the remaining assailants being an African American acquaintance known as Quincy, or Q, and his friends.
 {¶ 20} Even so, aspects of their testimony could lead a jury to reasonably question Jessica's and Robert's credibility. On cross-examination, Robert and Jessica each admitted they previously provided differing descriptions of the attack. Robert initially lied to the police about his involvement, claiming he was at a party at the time of the attack. After pleading guilty for her involvement in the assault, Jessica did not mention Quincy at all when she described the incident for her presentencing report, explaining at trial she omitted the information because she did not want to get anyone else in trouble.
 {¶ 21} Moreover, the timeline Jessica provided detailing the day's events presented problems. At one point she testified the assault on Lehmann occurred at 5:45 p.m., but later in her testimony she stated that the attack occurred at 6:30 p.m. The discrepancy is significant, because, in order to exculpate defendant from both convictions, the time frame in Jessica's testimony had to allow enough time for defendant to return from being maced at the Lehmann residence, clean herself, and leave for her mother's house by 6:00 p.m., as defendant's alibi witness, Frank Dunkle, her stepfather, testified she arrived there around that time. In addition, planning the attack on Lehmann had to occur during the same time period, with Robert, Quincy and his friends arriving after defendant departed. Depending upon when the attack on Lehmann occurred, Jessica's testimony, if believed, potentially accounted for defendant's whereabouts prior to and *Page 9 
during the attack without inculpating her, but the discrepancies in her account undercut the effectiveness of her testimony.
 {¶ 22} Moreover, the record reveals the involvement of Quincy and his friends to be less than indisputable. Jessica testified she did not know Quincy's last name and was not acquainted with any of the individuals who accompanied him to the fight. She further stated that, after the assault, Quincy and his friends left the scene separately. According to Jessica, apart from a single phone call, she had no further contact with him and could no longer contact him because his phone was disconnected. In addition, her testimony contradicts that of prosecution witnesses who testified both that only Caucasians were involved in the attack and that more than one woman was involved.
 {¶ 23} Finally, the details of the attack, as Robert and Jessica offered them, cast doubt on the credibility of their testimony. Robert testified only Jessica attacked Lehmann, and described it as a "fair fight the whole time." (Tr. 512.) The injuries suggest otherwise, as Jessica testified she herself sustained no injury during the assault; by contrast, defendant stipulated to the very serious injuries Lehmann suffered, including broken bones and a concussion. Moreover, Lehmann's testimony that a woman her own age first attacked her contradicts Robert's and Jessica's claims that Jessica was Lehmann's only assailant.
 {¶ 24} Such discrepancies in Robert's and Jessica's testimony could reasonably lead the jury to find their testimony less credible than the prosecution's witnesses. Given the evidence, the jury did not lose its way by choosing to believe the state's witnesses rather than defendant's witnesses. As the evidence does not weigh heavily in favor of *Page 10 
defendant, her convictions are not against the manifest weight of the evidence. Defendant's third assignment of error is overruled.
III. Fourth Assignment of Error {¶ 25} Defendant's fourth assignment of error claims she was denied the effective assistance of counsel because her trial counsel failed to file a pretrial motion to suppress Hunt's identification of the assailant, made inappropriate comments in commending a detective on his investigation, and failed to renew her Crim. R. 29 motion at the close of her case. Defendant contends the cumulative effects of these errors "resulted in a complete breakdown of the adversarial process," rendering the result of the trial unreliable. (Defendant's brief, 16.)
 {¶ 26} To prove ineffective assistance of counsel, defendant must first prove that counsel's performance was deficient. Strickland v.Washington (1984), 466 U.S. 668, 687. To meet the requirement, defendant must initially show counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Id. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Id. at 689. (Citation omitted.) Even debatable trial tactics do not constitute ineffective assistance of trial counsel. State v.Jordan, Franklin App. No. 04AP-827, 2005-Ohio-3790, at ¶ 17, quotingState v. Nichols (1996), 116 Ohio App.3d 759, 764.
 {¶ 27} Defendant must next demonstrate counsel's deficient performance prejudiced the defense by showing that, were it not for the errors, the result of the trial *Page 11 
probably would have been different. The failure to prove either prong of the Strickland test makes it unnecessary for a court to consider the other prong.
 {¶ 28} Defendant first claims her trial counsel should have tried to exclude Hunt's pretrial identification of defendant, as the investigating police officer lost the photo array used in making that identification. Even though trial counsel was aware of the missing photo array before the trial began, he did not file a pretrial motion to suppress, but instead offered an oral motion prior to Hunt's testimony. By counsel's raising the issue in the middle of the trial, defendant claims her trial counsel "arguably allowed the testimony to go more towards weight than admissibility" and waived a full review of the identification procedure under Stovall v. Denno (1967), 388 U.S. 293. (Defendant's brief, 14.) Defendant's contention lacks merit.
 {¶ 29} As an initial matter, failure to file a suppression motion does not constitute per se ineffective assistance of counsel. State v.Madrigal (2000), 87 Ohio St.3d 378, 389, citing Kimmelman v.Morrison (1986), 477 U.S. 365, 384. To establish ineffective assistance of counsel premised on failure to file a motion to suppress, a defendant must prove a basis to suppress the evidence in question. State v.Adams, 103 Ohio St.3d 508, 2004-Ohio-5845, at ¶ 35. When a witness is shown a photograph of a suspect before trial, due process requires a court to suppress a photo identification of the suspect if the photo array was unnecessarily suggestive of the defendant's guilt and the identification was not reliable. State v. Conkright, Lucas App. No. L-06-1107, 2007-Ohio-5315, citing State v. Waddy (1992),63 Ohio St.3d 424, 438. Defendant does not claim either the array was unnecessarily suggestive or the identification was not reliable. Her only complaint is the *Page 12 
photo array Hunt signed was lost; the identical photo array that Messer signed was accepted into evidence without objection.
 {¶ 30} Identification testimony may be admitted when the photo array used in making the identification is lost. See State v. King (Dec. 19, 1995), Franklin App. No. 95APA04-421. In King, a robbery victim, after viewing photos, identified two men as the perpetrators. The identification testimony of the victim and the investigating officer was admitted, even after the photo array was lost and the victim was unable to identify the defendant at trial. King held that under Evid. R. 801(D)(1)(c), "this testimony was admissible as substantive evidence, as long as the declarant testifies at trial, is subject to cross-examination concerning the statement, the statement is one of identification soon after perceiving him, and the circumstances demonstrate the reliability of the prior identification." Id. Because the King conditions are satisfied here, the identification was admissible, and trial counsel was not ineffective in not filing a pretrial motion to suppress.
 {¶ 31} Moreover, the comments of defense counsel concerning law enforcement investigation of the incident fall within the ambit of strategic decisions and thus do not constitute ineffective assistance of counsel. Defendant, however, argues on appeal that since one of the main points of the defendant's case was to attack the photo arrays, defense counsel served no valid purpose in bolstering the propriety of the manner in which they were performed. The record, however, presents an alternative explanation for counsel's actions. Several witnesses, including the victim, failed to identify defendant after viewing the photo arrays, so defense counsel may have been attempting to show the photo arrays were properly conducted and, in that way, highlight the witnesses' failure to *Page 13 
identify defendant, a failure that supported defendant's contention she was not at the scene of the crime.
 {¶ 32} Lastly, defense counsel's failure to renew the Crim. R. 29 motion did not constitute ineffective assistance, as the motion was without merit. Defendant thus suffered no prejudice in counsel's not renewing the motion. Because trial counsel was not ineffective, defendant's fourth assignment of error is overruled.
 {¶ 33} Having overruled defendant's four assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
 McGRATH, P.J., and SADLER, J., concur. *Page 1