[Cite as *Morgan v. Ohio State Univ. College of Dentistry*, 2014-Ohio-1846.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Gregory B. Morgan, | : | |
| Plaintiff-Appellant, | : | No. 13AP-287 |
| | | (Ct.Cl. No. 2010-05111) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| The Ohio State University College of Dentistry, | : | |
| | : | |
| Defendant-Appellee. | : | |
| | : | |

D E C I S I O N

Rendered on May 1, 2014

*Gregory B. Morgan,* pro se.

*Michael DeWine*, Attorney General, and *Daniel R. Forsythe,* for appellee.

APPEAL from the Court of Claims of Ohio

DORRIAN, J.

{¶ 1} Plaintiff-appellant, Gregory B. Morgan ("appellant"), appeals from a judgment entered by the Court of Claims of Ohio finding defendant-appellee, The Ohio State University College of Dentistry ("OSU"), not liable for either (1) professional negligence in the practice of dentistry ("dental malpractice"), or (2) the tort of providing dental treatment without having first obtained the patient's informed consent ("lack of informed consent"). For the reasons that follow, we affirm.

I. Facts and Procedural History

{¶ 2} On March 24, 2006, appellant sought care for a toothache at OSU's emergency pre-doctoral student dental clinic. Appellant was advised he needed to have a filling replaced. He was also advised that there was a possibility he would need a root

canal procedure on the tooth that was causing pain. According to the general system used in dentistry of numbering teeth, that posterior (back) tooth was tooth number 2.

{¶ 3}    Appellant was referred to the OSU post-graduate endodontics clinic where he was further examined and advised that the pain in tooth number 2 might resolve on its own. Appellant returned home with pain medication and returned the following day. After reviewing x-rays, OSU pre-doctoral clinicians determined that four of appellant's posterior teeth—teeth numbers 2, 15, 30, and 19—were in need of further treatment and began developing a treatment plan to remove decay, replace fillings, and place crowns on those four posterior teeth.

{¶ 4}    Appellant had a longstanding habit of grinding his teeth and indicated to OSU clinicians that he was interested in having restorative dental work done on his anterior (front) teeth to increase their length.[1] The clinicians noted that restorative work of this nature would be complex and not suitable for the pre-doctoral dental clinic. Appellant was advised that he could consult with the OSU post-graduate prosthodontics department regarding treatment options to lengthen his anterior teeth.

{¶ 5}    On May 8, 2006, appellant returned to the pre-doctoral clinic and signed a document reflecting a treatment plan for his four posterior teeth. The plan included crowning the four posterior teeth. Appellant initialed the treatment plan, thereby documenting his agreement that: (1) he had been informed about the risks of the proposed services; (2) he had been told how the services would help him and what might happen should he not proceed with the services; (3) he had been given time to ask questions about the services; (4) his questions had been answered well; and (5) he had not been given promises about the results of the proposed services.

{¶ 6}    During the summer of 2006, OSU dental students in the pre-doctoral clinic removed decay and placed new fillings in four of appellant's posterior teeth consistent with the May 8, 2006 treatment plan. OSU did not, however, place either temporary or permanent crowns on any of the four teeth during the summer of 2006.

{¶ 7}    On January 29, 2007, appellant met with Dr. Julie Holloway, director of the OSU post-doctoral prosthodontics department. Dr. Holloway screened and evaluated

---

[1] Appellant's expert described plaintiff's anterior upper and lower teeth as "extremely worn, pathologically worn." (Tr. Vol II X6-312.)

appellant to identify possible treatment options to accomplish appellant's stated desire to lengthen his anterior teeth. Holloway advised appellant of two possible treatment plans to accomplish that goal.

{¶ 8}  The first plan, described as a full-mouth rehabilitation, involved placing crowns on all of his teeth, effectively lengthening all of his teeth, at an estimated cost of $23,254.   The second plan involved two steps: (1) use of braces, placed by an OSU post-graduate orthodontics clinician, to first create space in appellant's mouth, followed by (2) placing crowns only on the anterior teeth to lengthen them. Dr. Holloway advised appellant that, should he choose treatment plan two, OSU would need to place crowns on the four posterior teeth prior to employing the braces in order to ensure that the teeth could withstand the forces the braces would exert. Those crowns would result in appellant's teeth being restored to their existing level.  Holloway advised that plan two would cost $16,698 and was the more conservative dental option, as it would involve less grinding down of existing tooth structure.   She further advised appellant that he would be required to make a down payment of 50 percent of the estimated cost and sign a treatment plan before any orthodontic or prosthodontic dental treatment of his anterior teeth could commence.

{¶ 9}  Appellant did not decide at the initial screening consultation with Dr. Holloway whether to proceed with either of the two treatment plans to lengthen his anterior teeth.  On July 16, 2007, however, an OSU endodontist performed a root canal procedure on the tooth that had initially caused pain—tooth number 2.  During August and September 2007, an OSU pre-doctoral student placed temporary crowns on the four posterior teeth.

{¶ 10} In October 2007, a dental student in OSU's pre-doctoral clinic placed the first of four permanent crowns on appellant's posterior teeth, which resulted in the tooth being restored to its existing length.   The parties agree that this crowning was consistent with treatment plan two.  Appellant testified that he was aware at that time that he was effectively committing to treatment plan two, rather than treatment plan one, as treatment plan one contemplated the placement of longer crowns on appellant's posterior teeth.

{¶ 11} In November 2007, OSU placed a permanent crown on another posterior tooth, also restoring that tooth to its existing length.  Appellant testified that, at that time, an OSU faculty member in the pre-doctoral clinic suggested that treatment plan two, as described to the faculty member by appellant, was complex and might not be successful. Appellant testified that he had not previously been advised that treatment plan two might fail.

{¶ 12}  In a subsequent visit to the pre-doctoral clinic, tooth number 15 broke at the gum line while the clinician was attempting to place a permanent crown on it.   It was discovered that the tooth was necrotic, necessitating another root canal procedure. Appellant testified that he described treatment plan two to the endodontist who performed the root canal and that she told him, in response to his inquiry, that it would be a bad idea for appellant to proceed with treatment plan two.

{¶ 13} OSU pre-doctoral clinicians had completed the permanent crowning of appellant's four posterior teeth by February 2008.  Thereafter, appellant consulted with OSU orthodontic resident, Dr. Matthew Ames, and with a post-doctoral prosthodontics resident, Dr. Mohamed Abdelhamed. These clinicians performed additional diagnosis and analytical steps relative to lengthening appellant's anterior teeth.  Appellant, who described himself as a "very proactive patient" (Tr. Vol. I X6-12) asked a great number of questions of the OSU clinicians with whom he consulted.

{¶ 14} On June 13, 2008, Dr. Abdelhamed presented appellant with a summary of a proposed treatment plan involving both orthodontic and prosthodontic treatment to lengthen appellant's upper anterior teeth.  Appellant had concerns and questions about the proposed plan which was different than the plans previously described to him.  He testified that Dr. Abelhamed informed him that it would not be possible to lengthen appellant's lower anterior teeth at all.

{¶ 15}   On June 24, 2008, appellant called the post-graduate prosthodontics clinic and requested a meeting with Dr. Abelhamed, Dr. Ames, and Dr. Holloway.   On July 25, 2008, appellant met with both Dr. Abdelhamed and Dr. Ames to again discuss appellant's options relative to the treatment plan to lengthen his anterior teeth that Dr. Abelhamed had proposed. Dr. Holloway did not participate in the meeting.

{¶ 16} On September 19, 2008, appellant met with Dr. Holloway. Dr. Holloway acknowledged that OSU could not proceed with implementing treatment plan two as previously described. She advised appellant that, should he choose to proceed with treatment plan one involving placement of longer crowns on all of his teeth, it would be necessary to remove the crowns that had already been placed at the existing level and that the removal would be at appellant's expense. Dr. Holloway testified that "things started getting contradictory" (Tr. Vol. III X6-430), and she ultimately advised appellant during the meeting that his case was not appropriate for the advanced prosthodontics and orthodontics clinics.[2]

{¶ 17} Dr. Holloway confirmed the substance of their meeting by writing a letter to appellant dated September 19, 2008. The letter dismissed appellant as a patient in OSU's graduate clinics and advised that he might consult with another dentist or prosthodontist of his choice for treatment of his anterior tooth wear. Dr. Holloway thus effectively terminated the possibility of appellant proceeding with any treatment plan at OSU to accomplish the goal of lengthening his anterior teeth. She additionally advised appellant that his dismissal from the post-graduate clinics did not preclude him from seeking routine treatment in the pre-doctoral dental clinic for simple decay issues and cleanings.

{¶ 18} Appellant never signed a final treatment plan relative to either treatment plan one or two, or any other treatment plan developed to address the restoration of his anterior teeth, nor did he deposit any funds towards dental care of that nature.

### A. Procedural History

{¶ 19} On March 22, 2010, appellant initiated this action in the Court of Claims by filing a 37-page pro se complaint asserting claims of dental malpractice, failure to obtain his informed consent, breach of contract, and "aiding and abetting." The parties conducted multiple depositions, and the court decided numerous pretrial motions. The court ordered bifurcation for trial of the issues of liability and damages. The liability trial took place over four days in December 2012. Appellant tried the case pro se and called a single expert witness, Dr. Davis Cagna, in support of his claims.

---

[2] Dr. Holloway recorded in notes of the meeting that she "informed the patient that due to the difficulty in starting treatment, the history of wanting refunds for the work done, and the threat of contacting an attorney, [she did] not feel that [appellant was] an appropriate teaching case for the advanced prosthodontics clinic." ( Tr. Vol. III x6-430.)

{¶ 20} On January 18, 2013, the court entered judgment in favor of OSU. It found that appellant had acknowledged in his closing argument[3] that his only theory of dental malpractice was based on OSU's failure to have a treatment plan in place to improve the aesthetics of his anterior teeth at the time the pre-doctoral clinicians placed the posterior permanent crowns. The court found that appellant had withdrawn his remaining claims and, that, even had he not withdrawn them, they nevertheless failed for lack of proof. The court specifically concluded that appellant had failed to prove the elements of the torts of dental malpractice and lack of informed consent in that he had failed to prove that: (1) OSU's treatment of him fell below the requisite standard of care; (2) appellant had been injured as the proximate result of OSU's treatment; and (3) OSU had treated appellant without having first obtained his informed consent.

{¶ 21} Appellant filed motions seeking judgment notwithstanding the verdict and a motion for new trial, both of which the trial court denied. Appellant then timely appealed the judgment to this court. We affirm.[4]

## II. Analysis

{¶ 22} We begin our analysis by reiterating that the trial court found that appellant had failed to offer expert testimony establishing all of the elements of either dental malpractice or lack of informed consent. We therefore first identify the elements of those two torts.

{¶ 23} In order to establish dental malpractice, a claimant must show by a preponderance of the evidence that: (1) the claimant was injured; (2) the injury was proximately caused by a dentist's act or omission; and (3) the act or omission was one that a dentist of ordinary skill, care, and diligence would not have taken under like or similar conditions or circumstances. *Palmer v. Richland Corr. Inst.*, 10th Dist. No. 04AP-540, 2004-Ohio-6717, ¶ 10*, citing *Bruni v. Tatsumi*, 46 Ohio St.2d 127 (1976), syllabus. *See also Danch v. Mitchell,* 10th Dist. No. 82AP-221 (Mar. 15, 1983) (citing *Bruni* and observing that, "[i]n light of the similar training and professional competency required of both doctors and dentists, we hold that dentists are required to exercise a correspondingly high standard of care" as required of physicians). To demonstrate the requisite standard

---

[3] The record before us does not include a transcript of appellant's closing argument.
[4] We also grant a pending motion filed by appellant to supplement the record with additional pages of the trial transcript as OSU specifically indicated at oral argument that it had no objection to the motion.

of skill and care of dentists in the dental community, the claimant must present expert testimony. *Palmer* at ¶ 10; *Condello v. Raiffe,* 8th Dist. No. 83076, 2004-Ohio-2554, ¶ 34-35; *Campbell v. The Ohio State Univ. Med. Ctr.,* 10th District No. 04AP-96, 2004-Ohio-6072, ¶ 10; *Bruni* at 130.

{¶ 24} The elements of the tort of lack of informed consent have been established by the Supreme Court of Ohio as follows:

> The tort of lack of informed consent is established when:
>
> (a) The physician fails to disclose to the patient and discuss the material risks and dangers inherently and potentially involved with respect to the proposed therapy, if any;
>
> (b) the unrevealed risks and dangers which should have been disclosed by the physician actually materialize and are the proximate cause of the injury to the patient; and
>
> (c) a reasonable person in the position of the patient would have decided against the therapy had the material risks and dangers inherent and incidental to treatment been disclosed to him or her prior to the therapy.

*Nickell v. Gonzalez*, 17 Ohio St.3d 136, 139 (1985).

{¶ 25} In addition, the Supreme Court of Ohio has determined that the tort of lack of informed consent is a medical claim, and therefore expert medical testimony is required to establish the first and second elements of the tort, i.e. (1) that the physician failed to disclose material risks and dangers inherently and potentially involved with a proposed therapy, and (2) that the undisclosed risk or danger actually materialized and proximately caused injury to the patient. *White v. Leimbach*, 131 Ohio St.3d 21, 2011-Ohio-6238, syllabus, citing *Nickell.* The third element, i.e., establishment of what a reasonable person in the position of a patient would have done had the material risks and dangers been disclosed prior to therapy, is a separate issue for the fact finder. *Stanley v. Ohio State Univ. Med. Ctr.*, 10th Dist. No. 12AP-999, 2013-Ohio-5140, ¶ 107, citing *White*. Consistent with our observation in *Danch*, we find these elements applicable to lack of informed consent claims asserted against dentists as they are to claims against physicians.

{¶ 26} Thus, proximate cause of injury is an element of both the tort of dental malpractice and the tort of lack of informed consent, and expert testimony is required to

establish the proximate cause element of both torts. That is, where a plaintiff alleges that a dentist is liable to him for either the tort of dental malpractice or the tort of lack of informed consent, liability is dependent upon the plaintiff producing expert testimony that the dentist's conduct was the proximate cause of an injury suffered by the claimant.

{¶ 27} The trial court observed that Dr. Cagna, appellant's sole expert witness, "gave only one opinion that was properly adduced and properly rendered," i.e., stated as being given to a reasonable degree of dental certainty. (Jan. 18, 2013 Decision, 9.) That opinion was that OSU breached the standard of care by prematurely placing four crowns on appellant's posterior teeth, i.e., "before performing a comprehensive occlusal analysis in formulating [appellant's] treatment plan." (Decision, 9.)

{¶ 28} The trial court concluded that Dr. Cagna had not testified that appellant's treatment by OSU proximately resulted in any injury to him. Specifically, the trial court concluded that "[appellant] has failed to prove by a preponderance of the evidence * * * that if there was negligence on behalf of [appellant], such negligence was a proximate cause of any injury to [appellant]." Moreover, as to the tort of lack of informed consent, it observed that appellant "clearly has the ability at this time to go forward with whatever subsequent treatment he would choose [and] has failed to prove * * * that any lack of informed consent proximately caused injury to him." (Jan. 18, 2013 Decision, 12.)

{¶ 29} In reviewing appellant's 19 assignments of error, we observe that none of them assign as error the trial court's finding that appellant had failed to elicit expert evidence of proximate cause. At oral argument, appellant explained that he did not address proximate cause at trial because the court restricted him from doing so when it ruled that Dr. Cagna's testimony shall be limited to the opinions he expressed in his deposition. In his first assignment of error, appellant alleges the trial court erred in this regard. Because the resolution of this first assignment of error could render moot many of appellant's assignments of error, we begin our analysis here.

{¶ 30} In his first assignment of error, appellant suggests that the trial court abused its discretion by limiting, prior to trial, the scope of Dr. Cagna's expert testimony. That assignment of error reads as follows:

> ASSIGNMENT OF ERROR NUMBER ONE
> The trial Court abused its discretion in its December 17, 2012 entry, when it restricted the trial testimony of Appellant's

expert witness, Dr. David R. Cagna, to those opinions he had
offered in his deposition.

{¶ 31} The record shows that OSU trial counsel deposed Dr. Cagna on December 3, 2012, and asked questions concerning a 13-page expert report prepared by Dr. Cagna dated October 2, 2012 ("original report"). The original report primarily addressed issues relative to whether OSU fell below the requisite standard of care in treating appellant but also briefly addressed issues concerning proximate cause of injury.[5]

{¶ 32} On December 6, 2012, with trial scheduled to begin on December 18, 2012, appellant sought leave to allow the submission of a supplemental expert report of Dr. Cagna and requested a status conference to discuss the matter. On December 12, 2012, appellant filed with the court a copy of the proposed supplemental report.

{¶ 33} On December 17, 2012, the trial court conducted a pretrial conference with the parties by telephone and, thereafter, entered the order at issue resolving numerous pending motions. In resolving the matter of allowing Dr. Cagna's untimely supplemental report, the court's entry dated that same day stated as follows:

> Plaintiff's request to provide a supplemental expert report of
> Dr. Cagna is GRANTED; however, Dr. Cagna's testimony shall
> be limited to the opinions he expressed in his deposition.

{¶ 34} It is evident that this trial court ruling concerning the scope of Dr. Cagna's testimony was an in limine order, i.e., "a tentative, interlocutory, precautionary ruling by the trial court reflecting its anticipatory treatment of an evidentiary issue." *State v. Kalusa,* 10th Dist. No. 11AP-826, 2012-Ohio-6021, ¶ 20, citing *State v. Grubb,* 28 Ohio St.3d 199, 201-02 (1986). A preliminary in limine ruling has no effect until it is acted upon at trial. *Id.* As particularly relevant to the case now before us, when a "trial court

---

[5] Dr. Cagna's original report stated, as follows:

> As a proximate result of the treatment rendered on or about 03/24/2006
> to 09/19/2008 by the OSU College of Dentistry to Mr. Morgan: (1) the
> plaintiff lost several years of appropriately directed treatment time, (2)
> dental disease processes affecting the plaintiff may have progressed
> beyond levels present on or about 03/24/2006, (3) the plaintiff invested
> substantial money receiving subtotal treatment at the OSU College of
> Dentistry that may need to be re-accomplished, and (4) the plaintiff now
> faces the need to embark on significant full-mouth dental treatment.

(Dec. 3, 2012 Cagna Depo., Exh. B, 11.)( Dec. 3, 2012 Cagna Depo., Exh. B, 11.)

bars evidence by granting a motion in limine, the opposing party must proffer the evidence during trial so that the court can make a final ruling." *Id.,* citing *Grubb* at 202–03. "Otherwise, the appellate court has nothing to consider, and the evidentiary issue has not been preserved for appeal." *Id.* During trial, appellant did not attempt to present or proffer evidence he felt the trial court had excluded in error in its in limine ruling.

{¶ 35} In the case before us, the trial court observed, after the presentation of all the evidence, that Dr. Cagna did not "say one word about proximate cause in his entire testimony, and [appellant] didn't ever ask him that question." ( Tr. Vol. III X6-555.) In the absence of a proffer of expert testimony supporting the existence of proximate cause, and consistent with *Kalusa,* we conclude that appellant did not preserve for appellate review error, if any, concerning the trial court's pretrial, in limine, ruling concerning the scope of Dr. Cagna's testimony.

{¶ 36} Notwithstanding appellant's failure to preserve the issue for appeal, we note that Dr. Cagna's deposition contained his opinions regarding proximate cause. Therefore, it appears appellant could have examined Dr. Cagna regarding issues of proximate cause as expressed in his deposition while still complying with the trial court's in limine order.

{¶ 37} We therefore overrule appellant's first assignment of error.

{¶ 38} Having found no error as alleged in the first assignment of error and considering appellant has not otherwise challenged the trial court's finding that appellant failed to establish proximate cause, we now review his remaining assignments of error. As discussed below, that circumstance renders moot the majority of appellant's assignments of error.

{¶ 39} We first address appellant's assignments of error that challenge findings of fact made by the trial court, as follows:

> ASSIGNMENT OF ERROR NUMBER FOUR
> The trial Court abused its discretion and erred when it found that Appellant failed to choose a treatment plan.
>
> ASSIGNMENT OF ERROR NUMBER SIX
> The trial Court abused its discretion when it accepted as fact Dr. Abdelhamed's contention that treatment options 1 and 2 were only options, and that no firm treatment plan was in place, and that the placement of the four crowns on Appellant's posterior teeth had nothing to do with treatment option 2.

ASSIGNMENT OF ERROR NUMBER SEVEN
The trial Court abused its discretion when it found that Appellant failed to prove OSU's failure to obtain informed consent.

ASSIGNMENT OF ERROR NUMBER EIGHT
The trial Court erred when it found that Appellant failed to show that he was "ready, willing, and able" to pay for treatment.

ASSIGNMENT OF ERROR NUMBER NINE
The trial Court erred when it found that Appellant was not committed to treatment plan 2 by the time the first crown was placed.

ASSIGNMENT OF ERROR NUMBER FIFTEEN
The trial Court erred when it found that OSU could not wait to put the crowns on until Appellant was able to pay $23.000.00 [sic] for option 1 or $16,000.00 for option 2.

ASSIGNMENT OF ERROR NUMBER SIXTEEN
The trial Court erred when it found that Appellant chose to proceed with treatment option 3 which involved doing nothing.

{¶ 40} These assignments of error challenge the trial court's findings of fact relative to OSU's alleged breach of the requisite standard of care. Assuming, arguendo, that the trial court erred in those findings of fact, that error would not affect the trial court's case-determinative conclusion that appellant failed to provide expert testimony of proximate cause of injury. We therefore find the foregoing assignments of error to be moot.

{¶ 41} Appellant's second assignment of error challenges the credibility of Dr. Holloway. It reads as follows:

ASSIGNMENT OF ERROR NUMBER TWO
The trial Court abused its discretion when it found Dr. Julie Holloway to be a credible witness.

{¶ 42} This assignment of error is also moot in light of the absence of expert opinion on proximate cause in appellant's case-in-chief. Upon finding a lack of expert testimony demonstrating proximate cause, the trial court had no alternative but to find

OSU not liable on appellant's tort claims, rendering irrelevant the question of whether Dr. Holloway's defense testimony in rebuttal was credible.

{¶ 43} Appellant's third assignment of error posits as follows:

> ASSIGNMENT OF ERROR NUMBER THREE
> The trial Court abused its discretion when it accepted expert testimony from Dr. Julie Holloway and other OSU doctors [sic] after they failed to comply with Local R. 7(E) in spite of Appellant's ongoing objections.

{¶ 44} In support of this proposition, appellant argues that OSU failed to comply with Loc.R. C.C.R. 7(E) in that it did not timely provide appellant with expert reports. Again, we need not address the substantive merits of this assignment of error because the testimony of the OSU dentists that OSU neither fell below the required standard of care, nor proximately caused injury, did not affect the outcome of the case. Appellant simply did not establish in his case-in-chief all the elements of his tort claims. Rebuttal testimony elicited by the defense was superfluous. Appellant's third assignment of error is therefore moot.

{¶ 45} For similar reasons, we also find appellant's fifth assignment of error to be moot. The fifth assignment of error challenges the trial court's admission at trial of Dr. Abdelhamed's discovery deposition. It reads as follows:

> ASSIGNMENT OF ERROR NUMBER FIVE
> The trial Court erred when it admitted expert medical testimony from Dr. Mohamed Abdelhamed and admitted his "discovery" deposition as a "trial" deposition.

{¶ 46} Again, Dr. Abdelhamed's deposition testimony rebutting the elements of appellant's tort theories was superfluous in the absence of prima facie expert testimony that appellant suffered an injury and that the injury was proximately caused by the conduct of OSU. Moreover, appellant was asked by the trial court at trial whether he objected to the introduction of this deposition, and he replied "No, your Honor." (Tr. Vol III X6-562.) Having failed to object at trial and, to the contrary, specifically indicating his acquiescence to the introduction of the deposition, appellant has waived error, if any, concerning the introduction of Dr. Abdelhamed's deposition.

{¶ 47} We turn to discussion of appellant's assignments of error that have not been rendered moot based on appellant's failure to prove proximate cause of injury at trial.

{¶ 48} Appellant's eleventh assignment of error challenges the court's pretrial refusal to allow him to amend his complaint. It reads as follows:

ASSIGNMENT OF ERROR NUMBER ELEVEN
The trial Court abused its discretion when it failed to "freely"
grant Appellant's motion to amend his complaint both before,
and during trial.

{¶ 49} On August 9, 2010, appellant sought leave to amend his complaint to add counts of fraudulent concealment, civil conspiracy, and battery. He argued that amendment of his complaint would more closely conform his pleading to the evidence he expected to produce at trial and would be in the interest of justice. On September 7, 2010, the court denied the motion without additional comment.

{¶ 50} We review the trial court's denial of leave to amend a complaint for abuse of discretion. *Wilmington Steel Prods., Inc. v. Cleveland Elec. Illum. Co.,* 60 Ohio St.3d 120 (1991).

{¶ 51} It is true that Civ.R. 59(A) provides that leave of court to amend a complaint shall be freely given when justice requires. However, we do not find that justice required the amendment of appellant's complaint. Despite appellant's protestations to the contrary, the record reflects that the trial court granted appellant a full and complete opportunity to introduce ample evidence concerning his grievances against OSU. Moreover, appellant did not suggest at the conclusion of the trial that he had established OSU liability for fraudulent conduct, civil conspiracy, or battery, nor did he ask the court to conform the complaint to the evidence as authorized by Civ.R. 15(B) ("[A]mendment of the pleadings as may be necessary to cause them to conform to the evidence * * * may be made upon motion of any party at any time, even after judgment."). Accordingly, we do not find an abuse of trial court discretion relative to denial of leave to amend appellant's filed complaint, and we overrule his eleventh assignment of error.

{¶ 52} In his twelfth assignment of error, appellant asserts another alleged pretrial error, as follows:

ASSIGNMENT OF ERROR NUMBER TWELVE
The trial Court erred by denying Appellant's motion for a
continuance of the liability phase of trial.

{¶ 53} "In ruling upon a motion for a continuance, the trial court balances its interest in controlling its docket and the public's interest in an efficient dispatch of justice with the possibility of prejudice to the movant." *J & H Reinforcing & Structural Erectors, Inc. v. Ohio School Facilities Comm.*, 10th Dist. No. 12AP-588, 2013-Ohio-3827, ¶ 55. The court may consider the length of delay requested, prior requests for continuances, the legitimacy of the request, whether the moving party contributed to the need for a continuance, inconvenience to the parties, counsel, and the court, and other relevant factors. *Townsend v. Ohio Dept. of Transp.*, 10th Dist. No. 11AP-672, 2012-Ohio-2945, ¶ 29. A trial court has broad discretion when ruling on a motion for continuance, and an appellate court reviews the trial court's determination of a motion to continue a trial date for abuse of discretion. *Id.* at ¶ 55.

{¶ 54} Appellant asked for a continuance of the December 10, 2012 trial date four days before trial, on December 6, 2012. The case had been pending since March 24, 2010. The trial court had previously granted a continuance of the trial. The parties had by that date conducted multiple depositions, and the court had resolved numerous procedural motions. Under these circumstances, the trial court did not abuse its discretion in refusing to grant another continuance, and we therefore overrule appellant's twelfth assignment of error.

{¶ 55} In his nineteenth assignment of error, appellant challenges the pretrial denial of appellant's December 10, 2012 motion to compel two other OSU dentists to testify via video link. It reads as follows:

> ASSIGNMENT OF ERROR NINETEEN
> The trial Court erred in denying Appellant's motion to compel
> the video link trial testimony of Dr. Matthew Ames and Dr.
> [Mayes] McEntire.

{¶ 56} In his motion, appellant argued that counsel for OSU had agreed that Dr. McEntire and Dr. Ames, both of whom no longer lived in Ohio, could testify via a video conference, rather than travel to Columbus for the trial in the Court of Claims. Appellant specifically asked the court to "compel [OSU] to keep the parties' agreement." (Dec. 10, 2010 Motion, 2.)

{¶ 57} In response to the motion, OSU stated that "there was never any agreement or promise between the parties that OSU would arrange video conference testimony of

two out of state witnesses."    (Dec. 11, 2012 Memoranda Contra, 1.)   It supported that proposition with an affidavit of OSU trial counsel to the same effect.   The affidavit also included counsel's testimony that appellant had indicated as late as December 6, 2012, that, should OSU not call Dr. Ames and Dr. McEntire as defense witnesses, appellant would use their depositions in lieu of testimony at trial.   The trial court denied appellant's motion on December 17, 2012, the day before trial commenced.

{¶ 58}   We note that appellant has failed to cite any authority requiring the trial court to accept testimony of witnesses not physically present at trial.   In view of this, as well as the circumstances described above, we find that the trial court did not abuse its discretion in denying appellant's motion to compel Dr. Ames and Dr. McEntire to testify via video link at the trial.   We therefore overrule appellant's nineteenth assignment of error.

{¶ 59} In his tenth assignment of error, appellant asserts that the trial court erred in finding at the conclusion of the trial that appellant had chosen not to pursue two theories of recovery pled in the complaint.   That assignment of error reads as follows:

> ASSIGNMENT OF ERROR NUMBER TEN
> The trial Court erred when it found that Appellant dropped his claims for breach of contract and aiding and abetting, dismissing these with no findings in fact and conclusions of law related to these causes of action.

{¶ 60} Appellant characterizes his claims of breach of contract and "aiding and abetting" as "non-medical claims" and suggests that the trial court erroneously refused to allow him to present evidence in support of those claims.   He bases this argument on the fact that the trial court stated, during the course of appellant's own testimony in his case-in-chief, that the court "only want[ed] to deal with those matters that are relevant to the issue of whether the standard of care was maintained by the University and its faculty and staff."  (Tr. Vol. I X6-139.)

{¶ 61} The court made this statement, however, in the context of a question by appellant as to whether the court "want[ed] him to testify to anything" that occurred after the date appellant had filed his complaint.   (Tr. Vol. I X6-138.)   We do not view this isolated statement as representing a ruling excluding evidence.   Moreover, appellant does not identify any instances where the trial court sustained an OSU objection to the

appellant's attempted introduction of evidence, nor to any instances where the trial court excluded proffered evidence relevant to either his contract or aiding and abetting claims. In the absence of objection in the trial court, appellant has waived error, if any, relative to appellant's claims for breach of contract and aiding and abetting.

{¶ 62} Moreover, appellant suggests that he provided evidence that OSU had breached a contract between himself and OSU in which OSU would follow treatment plan two and restore length in both his upper and lower anterior teeth. But it is axiomatic that a contract claim requires proof of an agreement, i.e., a meeting of the minds. *Schleicher v. Alliance Corporate Resources, Inc.,* 10th Dist. No. 95APE-3-311 (Dec. 7, 1995). The trial court found that OSU and appellant never reached a meeting of the minds as to what treatment plan, if any, OSU would follow in regard to lengthening his teeth. We do not disturb that finding of fact by the trial court, as the record includes competent, credible evidence to support it.

{¶ 63} Appellant also suggests in the text of his tenth assignment of error that he did not abandon his claim of "aiding and abetting," contrary to the trial court's decision. Appellant does not, however, identify any authority recognizing any such theory of tort liability, nor does he address his "aiding and abetting" claim in the body of his argument in support of the tenth assignment of error.

{¶ 64} App.R. 12(A)(2) authorizes an appellate court to "disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)." *Lundeen v. State Med. Bd. of Ohio*, 10th Dist., 10th Dist. No. 12AP-629, 2013-Ohio-112, ¶ 16. In addition, "[p]ursuant to App.R. 16(A)(7), an appellant must present his or her contentions with respect to each assignment of error presented for review and the reasons in support of those contentions, including citations to legal authorities." *Id.* In an appeal to this court, "[t]he burden of affirmatively demonstrating error on appeal rests with the party asserting error." *Id.*

{¶ 65} Pursuant to App.R. 12(A)(2), we may disregard an assignment of error if an appellant fails to cite to any legal authority in support of an argument as required by App.R. 16(A)(7). We disregard appellant's argument concerning the abandonment of a claim for aiding and abetting pursuant to those rules.

{¶ 66} We therefore overrule appellant's tenth assignment of error

{¶ 67} Appellant's thirteenth and seventeenth assignments of error challenge the trial court's rulings relative to appellant's post-trial Civ.R. 59 motion for a new trial, as follows:

ASSIGNMENT OF ERROR NUMBER THIRTEEN
The trial Court abused its discretion when it failed to grant Appellant's motion for a new trial.

ASSIGNMENT OF ERROR NUMBER SEVENTEEN
The trial Court erred when it denied Appellant's motion to present new evidence in support of his motion for a new trial.

{¶ 68} "As a general matter, Civ.R. 59 does not require that a trial court grant a new trial, but rather, the rule allows a trial court the discretion to decide whether a new trial is appropriate." *Alderman v. Alderman*, 10th Dist. No. 10AP-1037, 2011-Ohio-3928, ¶ 11. "The decision to grant or deny a motion for a new trial pursuant to Civ.R. 59 generally lies within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion." *Weinstock v. McQuillen,* 10th Dist. No. 09AP-539, 2010-Ohio-1071, ¶ 10. The rule provides a mechanism by which a trial court may permit the parties to try their case anew in order to prevent a miscarriage of justice. *Alderman* at ¶ 10. An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Id.,* citing *Masters v. Masters,* 69 Ohio St.3d 83, 85 (1994). Under an abuse-of-discretion standard, we are required to "defer to a trial court's ruling because 'the trial judge is better situated than a reviewing court to pass on questions of witness credibility and the "surrounding circumstances and atmosphere of the trial." ' " *Alderman* at ¶ 13, quoting *Malone v. Courtyard by Marriott Ltd. Partnership,* 74 Ohio St.3d 440, 448 (1996).

{¶ 69} Appellant contends the trial court should have granted him a new trial because: (1) the trial court should have, but did not, enforce its order requiring OSU to supply expert reports of defense witnesses resulting in appellant experiencing surprise at trial; (2) the court erred in limiting Cagna's expert testimony; and (3) OSU did not provide him all pertinent medical records until shortly before trial. To the extent we have not previously addressed these contentions individually earlier in this decision, we reject them, as they lack merit as justification for a new trial. Contrary to appellant's assertions,

the court's judgment was supported by competent, credible, and sufficient evidence, and appellant had a full opportunity to ask Dr. Cagna questions concerning the issue of whether he suffered injury as the proximate result of OSU's treatment of him.  Appellant has not demonstrated that the trial court abused its discretion in denying his motion for new trial.

{¶ 70} We therefore overrule appellant's thirteenth and seventeenth assignments of error.

{¶ 71} Similarly, we overrule appellant's fourteenth assignment of error, which challenges the trial court's denial of a Civ.R. 50(B) motion for judgment notwithstanding the verdict.  It reads as follows:

> ASSIGNMENT OF ERROR NUMBER FOURTEEN
> The trial Court erred when it failed to grant Appellant's motion for judgment notwithstanding the verdict.

{¶ 72} A Civ.R. 50 motion, however, is not appropriate in cases tried to the bench where no jury verdict is rendered.  As we observed in *Boyer v. Ohio State Univ. Med. Ctr.*, 10th Dist. No. 07AP-742, 2008-Ohio-2278, ¶ 18:

> In *Freeman v. Wilkinson* (1992), 65 Ohio St.3d 307, 603 N.E.2d 993, the Supreme Court of Ohio explained: "Civ.R. 50(B) governs motions for judgment notwithstanding the verdict; however, as the term 'verdict' implies, it only applies in cases tried by jury." *Id.* at 309, 603 N.E.2d 993. See, also, *Brooks v. Lady Foot Locker*, Summit App. No. 22297, 2005-Ohio-2394, at ¶ 61 (noting that "[a] motion for judgment notwithstanding the verdict can only be made regarding claims that the jury returned a verdict on.") In this [court of claims] case, plaintiff was not entitled to a jury trial, and the matter was tried to the court. See R.C. 2743.11 ("No claimant in the court of claims shall be entitled to have his civil action against the state determined by a trial by jury.")

{¶ 73} In this Court of Claims case, the trial court sat as the trier of fact without a jury pursuant to R.C. 2743.11 ("No claimant in the court of claims shall be entitled to have his civil action against the state determined by a trial by jury.").  Accordingly, the Court of Claims appropriately denied appellant's Civ.R. 50 motion for judgment notwithstanding the verdict and we, therefore, overrule his fourteenth assignment of error.

{¶ 74} Finally, we address appellant's eighteenth assignment of error, which states as follows:

> ASSIGNMENT OF ERROR NUMBER EIGHTEEN
> The trial Court abused its discretion when it denied Appellant's request to lift Dr. Holloway's immunity.

{¶ 75} The entirety of appellant's argument in support of this assignment of error reads, as follows:

> The trial Court' [sic] failure to follow procedure and the rules of Court prevented [appellant] from properly preparing and presenting his case, and thus [appellant] was prevented from fully presenting his case to lift Holloway's immunity.

{¶ 76} In its decision, the trial court found that Dr. Holloway was entitled to immunity pursuant to R.C. 2743.02(F) and 9.86 and that the court of common pleas therefore lacked jurisdiction over any civil actions appellant had against Dr. Holloway. It appears that appellant's eighteenth assignment of error relates in some way to that part of the trial court's decision.

{¶ 77} As we have noted in our discussion of appellant's tenth assignment of error, however, App.R. 12(A)(2) authorizes this court to disregard an assignment of error if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief as required under App.R. 16(A). We overrule appellant's eighteenth assignment of error challenging the court's ruling concerning Dr. Holloway's immunity based on appellant's failure to (1) adequately support the assignment of error with a cogent argument; (2) specifically identify in the record the basis of the assignment of error; and (3) include any citation of legal authority in support of the assignment.

## III. Conclusion

{¶ 78} For the foregoing reasons, we overrule appellant's first, tenth, eleventh, twelfth, thirteenth, fourteenth, seventeenth, eighteenth, and nineteenth assignments of error and find appellant's remaining assignments of error to be moot. The judgment of the Court of Claims of Ohio is hereby affirmed.

*Judgment affirmed.*

SADLER, P.J., and O'GRADY, J., concur.
_____