[Cite as *State v. Jackson*, 2015-Ohio-3322.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 14AP-670 |
| | | (C.P.C. No. 13CR-5414) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Atiya L. Jackson, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on August 18, 2015

*Ron O'Brien*, Prosecuting Attorney, and *Laura R. Swisher*, for appellee.

*Yeura R. Venters*, Public Defender, and *Emily L. Huddleston*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Defendant-appellant, Atiya L. Jackson ("appellant"), appeals the July 29, 2014 decision of the Franklin County Court of Common Pleas entering a judgment of conviction, pursuant to a jury verdict, and sentencing her. For the reasons that follow, we affirm the judgment of the trial court.

I. Facts and Procedural History

{¶ 2} On September 30, 2013, Officer Glenn Allison, a Columbus police officer, was working as a plainclothes officer with his partner, Officer Melvin Romans, when he received a report of suspicious behavior near the campus of The Ohio State University. The officers arrived in the area and located three individuals, one wearing a white shirt, one wearing red and white plaid clothing, and one wearing a blue shirt with a hood, who

were "walking in apparently no particular direction." (Tr. 55.) At the time, Officer Allison believed all three individuals were male.

{¶ 3}   As the officers separately observed them, the group ran toward a person with a bag who was walking in front of them. When they were within 50 feet of the person, he turned abruptly and entered a building as the group ran past him and then resumed walking.  At that point, Officer Romans saw one of the three individuals point at him and say something before all three began running toward him. The officer stated on his radio "I think they're going to try to rob me." (Tr. 141.) Before they reached him, the officer evaded the group by moving between houses.

{¶ 4}   Officer Allison, who had lost sight of the group as they ran toward Officer Romans, saw a man carrying a bag, who was later identified as Kevin Pelley, walk past where he was sitting. He then observed the three individuals walking toward him. The group stopped approximately ten feet in front of the officer, at which time he observed that the individual in the blue hooded shirt, whom he later identified as appellant, was female. The officer thought that the group might be targeting him, but they instead ran toward Pelley.  The officer stated on his radio: "They're about to rob this guy, get ready." (Tr. 70.)

{¶ 5}   Once the group reached Pelley, the two men tackled him and assaulted him. The officer observed that appellant was standing very close to the men. When Officer Allison was approximately one house away from them, he pulled out his gun and badge and yelled, "Police, get on the ground." (Tr. 71.) The individuals around Pelley saw the officer and ran in different directions. Officer Allison ran past appellant and followed the male suspect in the white shirt, apprehending him with the assistance of another officer. The male suspect in the red and white plaid clothing was then apprehended by other officers.

{¶ 6}   Officer Romans searched the suspect in the white shirt and discovered a key fob, which he confiscated. The officer then returned to the area where he first observed the suspects while pressing the alarm button on the key fob.  When he pressed the button, a car in a nearby parking lot made a noise and the officer observed a woman wearing a blue hooded shirt and dark jeans looking around. The officer approached the woman, whom he identified as appellant, and ordered the woman to show her hands. As he

approached her, she shouted, "I didn't grab nobody. It wasn't me. I didn't grab nobody," and asked the officer: "Did you shoot them? Did you shoot them?" (Tr. 154-55.) Appellant was then arrested.

{¶ 7} On the same night, Pelley was walking home after stopping to buy groceries when he heard people running toward him. When he turned around, he saw three individuals, two men and one woman. Seconds later, one of the men, who was wearing a white shirt, punched Pelley on the side of his head. Pelley swung his grocery bag at his attackers and struggled with both men until he fell to the ground. The two men searched Pelley's pockets and took his money and phone. One of the men told the woman, whom Pelley identified as appellant, to search his bag. Pelley saw the woman kneel down and search his bag. Pelley testified that he received a serious bruise from being kicked in the back of his neck.

{¶ 8} On October 10, 2013, a Franklin County Grand Jury filed an indictment, charging appellant with two criminal counts: robbery in violation of R.C. 2911.02, a felony of the second degree; and robbery in violation of R.C. 2911.02, a felony of the third degree. Following a bench trial, on May 7, 2014, the trial court found appellant guilty of all counts. On July 24, 2014, the trial court held a sentencing hearing, imposing two years of community control, informing her she would receive a prison term of six years if she violates community control, and giving credit for 140 days already served. On July 29, 2014, the trial court filed a judgment entry reflecting appellant's conviction and sentence.

## II. Assignments of Error

{¶ 9} Appellant appeals, assigning the following three errors for our review:

I. The trial court erred when it entered judgment against the defendant when the evidence was insufficient to sustain the convictions.

II. The judgment of the trial court was against the manifest weight of the evidence.

III. Counsel for Appellant fell short of providing adequate representation and as a result Appellant's right to effective assistance of counsel was violated.

Since appellant argues her first and second assignments of error together, we will address them jointly.

**III. First and Second Assignments of Error**

{¶ 10} In her first and second assignments of error, appellant asserts that the trial court's judgment of conviction was insufficiently supported by the evidence presented at trial and was against the manifest weight of the evidence.

{¶ 11} We begin by noting that appellant in her appellate brief makes no separate argument regarding the sufficiency of the evidence and urges reversal only on the basis that her conviction is "against the manifest weight of the evidence." (Appellant's Brief, 16.) App.R. 12(A)(2) provides that an appellate court "may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)." Additionally, App.R. 16(A)(7) requires that an appellant's brief include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." "In an appeal to this court, '[t]he burden of affirmatively demonstrating error on appeal rests with the party asserting error.' " *Morgan v. Ohio State Univ. College of Dentistry*, 10th Dist. No. 13AP-287, 2014-Ohio-1846, ¶ 64, quoting *Lundeen v. State Med. Bd. of Ohio*, 10th Dist. No. 12AP-629, 2013-Ohio-112, ¶ 16.

{¶ 12} Pursuant to App.R. 12(A)(2), we disregard appellant's first assignment of error regarding the sufficiency of the evidence and address only appellant's arguments relating to the manifest weight of the evidence. *Morgan* at ¶ 65; *State v. Jordan*, 10th Dist. No. 11AP-691, 2012-Ohio-1760, ¶ 17. *See also State v. Thomas*, 8th Dist. No. 94443, 2011-Ohio-85, ¶ 2, citing *State v. Judd*, 8th Dist. No. 89278, 2007-Ohio-6811, ¶ 46.

{¶ 13} "While sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief." *State v. Cassell*, 10th Dist. No. 08AP-1093, 2010-Ohio-1881, ¶ 38, citing *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 25. *See also State v. Thompkins*, 78 Ohio St.3d 380, 386-87 ("Although a court of appeals may determine that a judgment of a trial

court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence."). An appellate court must review the entire record, weighing the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). This authority " 'should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *Martin* at 175.

{¶ 14} Here, appellant asserts that the trial court erred in convicting appellant because the state presented conflicting testimony. (Appellant's Brief, 11, 15.) First, appellant contends that Officer Allison's testimony conflicts with that of Pelley regarding whether appellant searched Pelley's bag. Officer Allison testified that he never saw appellant take anything from Pelley. Although the officer saw Pelley carrying a bag, he did not observe appellant touch it.  Pelley, on the other hand, specifically testified that he saw appellant looking through his grocery bag. When asked by the trial court whether there was "any doubt" that appellant was looking through his bag, he answered, "No." (Tr. 200.)

{¶ 15} Appellant also contends that Pelley and Officer Allison's accounts differ on the events that occurred before Pelley was assaulted. Officer Allison stated that the three individuals in the group ran together toward Pelley.  Pelley stated that he walked past one individual in the group who was sitting on a step and did not notice the other two until they were running toward him.

{¶ 16} We disagree with appellant's contention that the testimonies of Officer Allison and Pelley are inconsistent. The testimonies of witnesses are not inconsistent merely because one witness observes additional details when both observed the same event from different perspectives. *See State v. Banks*, 10th Dist. No. 09AP-13, 2009-Ohio-4383, ¶ 15; *In re C.A.*, 9th Dist. No. 26690, 2013-Ohio-3903, ¶ 17 (finding different accounts to be reasonable where witnesses were "observing events from different points of view" in a "likely confusing and distracting" situation). With regard to whether appellant searched Pelley's bag, Officer Allison was running to the suspects from a distance while pulling out his badge and firearm, while Pelley was lying on the ground surrounded by

appellant and the two assailants. Further, Officer Allison testified that he was focusing on the two men who were assaulting the victim because he "wanted to stop the assault" and that he did not have a direct line of sight on appellant the entire time. (Tr. 73.) Similarly, with regard to the differences in the accounts between the movements of the group in the two accounts, there was a period of time where Officer Allison lost sight of the group of suspects before he observed Pelley being followed by the group. Therefore, it is reasonable to conclude that Pelley observed something that Officer Allison did not.

{¶ 17} However, even if we considered the testimony of Officer Allison and Pelley to be inconsistent, "[a] defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial." *State v. Chandler*, 10th Dist. No. 05AP-415, 2006-Ohio-2070, ¶ 9, citing *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21. *See also State v. Taylor*, 10th Dist. No. 14AP-254, 2015-Ohio-2490, ¶ 34, citing *State v. Rankin*, 10th Dist. No. 10AP-1118, 2011-Ohio-5131, ¶ 29. The trier of fact may take into consideration a witness's conflicting testimony in determining his or her credibility and the persuasiveness of his or her account by either discounting or resolving the discrepancies. *Taylor* at ¶ 34. The trier of fact may believe all, part, or none of a witness's testimony. *Id.* Furthermore, "not all conflicting testimony raises serious questions about credibility." *Id.* Here, the differences between the two accounts do not raise serious questions about credibility. Therefore, we find that it was reasonable for the trial court, as the trier of fact, to resolve or discount the alleged inconsistencies in the state's favor. *Banks* at ¶ 15; *Taylor* at ¶ 34.

{¶ 18} Finally, appellant points to a discrepancy between Pelley's testimony at trial and the statement he gave to the police after the incident.[1] The police statement reflects that, after the incident, Pelley described the first person who hit him and stated that "he couldn't give a real description of the other two suspects other than they were young male blacks," but also stated that "he would be able to remember their clothing if he saw it." (Detective's Report, 2; aka Defendant's Exhibit 1.) After being taken to where appellant and the other suspects were being detained, Pelley identified all of the suspects. The police

---

[1] We note the state argues that the police summary was improperly admitted into evidence. Because our resolution of appellant's assignment of error does not depend on the propriety of the admission of this evidence, we need not further consider the state's argument in this instance.

statement reflects that Pelley "identified the other suspect, which turned out to be a female, by her shirt, pants and boots. He stated the female had a jacket on earlier and her hair was different." (Detective's Report, 2; aka Defendant's Exhibit 1.) At trial, Pelley stated that the group that attacked him consisted of "two males and one female" and that "the female had, like, a blue jacket or something and a darker coat too, as well." (Tr. 194.) Pelley disputed the police summary's account of his statements at the time:

> THE COURT: I realize it's not your statement. I realize that. I realize it's a summary. The summary, does he claim that you told him that it was three black males?
>
> THE WITNESS: Yes.
>
> THE COURT: Does that assist you in thinking about when you said that to him or - -
>
> THE WITNESS: I know I said "people."
>
> THE COURT: You believe you said "people," is that correct?
>
> THE WITNESS: Yes. Yes.

(Tr. 235.)

{¶ 19} Here, the trial court considered the inconsistencies between Pelley's testimony and the police summary when considering the credibility of the witness. Specifically, the court stated, "Did it concern me that there might be an inconsistency in the summary? Sure. He may have thought she was a male if the hoodie was up. He wasn't sure if the hoodie was up or down. It might be hard to tell whether somebody is a male or female, but I don't have any evidence." (Tr. 322-23.) However, the court, weighing the credibility of the officers and Pelley, stated that "I am allowed to believe or disbelieve any, all or part, but as a whole, I found them credible," and specifically found that Pelley was "very credible." (Tr. 323.)

{¶ 20} This court has consistently held that the weight to be given to inconsistencies in any witness's testimony is a determination within the province of the trier of fact. *State v. Spires*, 10th Dist. No. 10AP-861, 2011-Ohio-3312, ¶ 23. Here, it was reasonable for the trial court, in weighing the inconsistencies in the evidence, to choose to credit the state's case. *Taylor* at ¶ 34. Therefore, reviewing the entire record and

considering the credibility of witnesses, we cannot agree that the fact finder's resolution of conflicting evidence created a manifest miscarriage of justice such that appellant's conviction must be reversed.

{¶ 21} Accordingly, we overrule appellant's first and second assignments of error.

## IV. Third Assignment of Error

{¶ 22} In her third assignment of error, appellant asserts that her trial counsel rendered ineffective assistance of counsel because counsel (1) failed to object to the admission of photographic evidence, and (2) failed to renew a motion for acquittal pursuant to Crim.R. 29 at the close of all of the evidence.

{¶ 23} A convicted defendant alleging ineffective assistance of counsel must demonstrate that: (1) defense counsel's performance was so deficient that he or she was not functioning as the counsel guaranteed under the Sixth Amendment to the United States Constitution; and (2) defense counsel's errors prejudiced defendant, depriving him or her of a trial whose result is reliable. *State v. Campbell*, 10th Dist. No. 03AP-147, 2003-Ohio-6305, ¶ 24, citing *Strickland v. Washington*, 466 U.S. 668 (1984); *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus, *cert. denied*, 497 U.S. 1011 (1990).

{¶ 24} "Judicial scrutiny of counsel's performance must be highly deferential * * * [and] [a] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland* at 689; *Bradley* at 141. In Ohio, a properly licensed attorney is presumed competent. *State v. Davis*, 10th Dist. No. 13AP-98, 2014-Ohio-90, ¶ 20, citing *Vaughn v. Maxwell*, 2 Ohio St.2d 299, 301 (1965). Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998).

{¶ 25} First, we find that appellant's trial counsel was not ineffective for failing to object to the admission of the state's photographic evidence because the photographs were too dark and, therefore, were not true and accurate depictions of the scene. We have previously held that " 'the failure to make objections is not alone enough to sustain a claim of ineffective assistance of counsel.' " *See State v. Jeffers*, 10th Dist. No. 10AP-1112, 2011-Ohio-3555, ¶ 20, quoting *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 103, citing *State v. Holloway*, 38 Ohio St.3d 239, 244 (1988), citing *State v. Gumm*, 73 Ohio

St.3d 413, 428 (1995). Further, appellant's trial counsel could have been pursuing a legitimate trial strategy by refraining from objecting to the state's photographic evidence. *State v. Fisk*, 9th Dist. No. 21196, 2003-Ohio-3149, ¶ 9, quoting *State v. Phillips*, 74 Ohio St.3d 72, 85 (1995) ("It is well settled that an attorney's decisions not to file a motion to suppress or not object at certain times during trial are 'debatable trial tactics [that] generally do not constitute a deprivation of effective counsel.' "); *State v. Sykes*, 10th Dist. No. 04AP-381, 2004-Ohio-1813, ¶ 7.

{¶ 26} Nevertheless, even if we were to assume that appellant's trial counsel performed deficiently in failing to object to the testimony, appellant has failed to demonstrate prejudice by the failure to object. " 'To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.' " *State v. Griffin*, 10th Dist. No. 10AP-902, 2011-Ohio-4250, ¶ 42, quoting *Bradley* at paragraph three of the syllabus. Appellant fails to assert that the result of the proceeding would have been different but for the admission of the photographic evidence. Therefore, we cannot find that appellant's trial counsel rendered ineffective assistance of counsel by failing to object to the state's photographic evidence. *Jeffers* at ¶ 21; *State v. White*, 10th Dist. No. 10AP-34, 2011-Ohio-2364, ¶ 84 (finding no ineffective assistance of counsel where appellant failed to argue prejudicial impact resulting from admission of alleged hearsay testimony).

{¶ 27} Second, we find that trial counsel's failure to renew a motion for acquittal pursuant to Crim.R. 29 did not constitute ineffective assistance of counsel. As appellant notes in her brief, her trial counsel did in fact renew a Crim.R. 29 motion for acquittal but then sought and received permission from the court to call an unexpected witness. However, appellant fails to assert, with reference to the record, any prejudice arising from her counsel's failure to renew the motion again after presenting testimony from this witness. As appellant fails to demonstrate prejudice arising from the failure to renew the motion, under the second part of the *Strickland* test, we cannot find that her trial counsel rendered ineffective representation. *See State v. Messer-Tomak*, 10th Dist. No. 07AP-720, 2008-Ohio-2285, ¶ 32; *State v. Haskell*, 3d Dist. No. 13-03-45, 2004-Ohio-3345, ¶ 19 (finding no ineffective assistance of counsel where appellant failed to point "to any place

in the transcript where such evidence was admitted following the close of the state's case that would alter our conclusion that there had been sufficient evidence presented to the jury such that reasonable minds could reach different conclusions"); *Bradley* at 142.

{¶ 28} Accordingly, we overrule appellant's third assignment of error.

## V. Disposition

{¶ 29} Having overruled appellant's three assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

LUPER SCHUSTER and BRUNNER, JJ., concur.

―――――――――――――――