[Cite as *Crosscut Capital, L.L.C. v. DeWitt*, 2025-Ohio-1150.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Crosscut Capital, LLC, | : | |
| Plaintiff-Appellee, | : | No. 24AP-278 (C.P.C. No. 19CV-4525) |
| v. | : | (REGULAR CALENDAR) |
| Nicholas DeWitt, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on March 31, 2025

**On brief:** *Isaac Wiles & Burkholder LLC*, *Joseph C. Pickens*, and *Charles C. Schneider*, for appellee. **Argued:** *Charles C. Schneider*.

**On brief:** *Edward S. Brown*, for appellant. **Argued:** *Edward S. Brown*.

APPEAL from the Franklin County Court of Common Pleas

PER CURIAM.

{¶ 1} Defendant-appellant, Nicholas DeWitt, appeals the April 9, 2024 decision and entry of the Franklin County Court of Common Pleas. For the following reasons, we dismiss DeWitt's appeal.

## I. PROCEDURAL HISTORY AND FACTS

{¶ 2} In 2015, DeWitt and plaintiff-appellee, Crosscut Capital, LLC ("Crosscut Capital"), partnered to form WKND Property Group, LLC ("WKND"), to buy, renovate, and sell real estate for profit. The parties entered into an operating agreement on October 26, 2015, which they amended on March 23, 2017 regarding distributions and allocations. Shortly thereafter, the parties' business relationship soured.

{¶ 3}   On November 9, 2018, DeWitt filed an action alleging that he executed the amendment to the operating agreement under duress.  On January 10, 2019, DeWitt voluntarily dismissed the action.

{¶ 4}   On June 4, 2019, Crosscut Capital filed this action against DeWitt.  Crosscut Capital alleged four claims against DeWitt, including breach of fiduciary duty, breach of the operating agreement, and requests for injunctive relief and a declaratory judgment.  Crosscut Capital's complaint alleged that on December 18, 2015, WKND, with funds from Crosscut Capital, purchased a home at 123 S. Champion Ave. in Columbus ("the Property"), with the intent of DeWitt renovating and selling the Property.  Crosscut Capital stated in its complaint that it made an initial capital contribution to WKND, but that "Dewitt failed to even remotely adhere to budgets or timeframes for completion of rehabilitation or sales of the propert[y]" and that "Dewitt used WKND funds for personal expenses unrelated to the business."  (Compl. at ¶ 13.)  Crosscut Capital also alleged that no work had been done at the Property since October 2018, despite Crosscut Capital providing funds to WKND for DeWitt to continue renovations.

{¶ 5}   On July 2, 2019, DeWitt filed an answer and counterclaim for declaratory judgment wherein he argued, in part, that Crosscut Capital withdrew funds from WKND's account in violation of the operating agreement, and this lack of funds was why the planned renovations were not completed.  On July 30, 2019, Crosscut Capital filed a motion for judgment on the pleadings with respect to DeWitt's counterclaim.  On August 24, 2020, the trial court granted Crosscut Capital's motion for judgment on the pleadings, leaving pending only Crosscut Capital's claims for relief.

{¶ 6}   On September 5, 2019, Crosscut Capital filed a motion for an order approving the sale of the Property.  On September 19, 2020, DeWitt filed a memorandum in opposition to the sale of the Property, and a motion for an order to compel Crosscut Capital to replace funds DeWitt argued it removed against the terms of the operating agreement.

{¶ 7}   On September 30, 2020, Crosscut Capital filed a motion for a protective order, which included a request for sanctions.  Crosscut Capital argued that counsel for DeWitt sent an email to the board of trustees of Congregation Beth Israel seeking "character witnesses" and information regarding William Koslow, one of the officers of Crosscut Capital. (Pl.'s Mot. for a Protective Order, Ex. 2 at 2.)  In his email, DeWitt's counsel alleged that he was working with the IRS criminal investigation unit "with regards as to whether

Mr. Koslow is laundering money and or evading taxes and providing them with tax records that he filed that don't match bank records." (Pl.'s Mot. for a Protective Order, Ex. 1.)  The email to the board also questioned Koslow's character and included screenshots of online reviews of a strip club that appear to be written by Koslow.

{¶ 8}  On February 17, 2023, the trial court issued a decision and entry on Crosscut Capital's motion for a protective order and its motion for an order approving the sale of real property.  The trial court granted Crosscut Capital's motion for a protective order and found that DeWitt's counsel's email was inappropriate and resulted in unnecessary embarrassment to Koslow.  The trial court also determined that it was necessary for an evidentiary hearing to evaluate Crosscut Capital's request for monetary sanctions and its request to sell the Property.  The trial court also denied a motion from Crosscut Capital for contempt related to DeWitt's discovery responses.

{¶ 9}  On July 28, 2023, the trial court held an evidentiary hearing on Crosscut Capital's motion for sale of the Property, DeWitt's combined motion regarding the sale of the Property and to compel Crosscut Capital to replace funds in WKND's account, and Crosscut Capital's request for sanctions.  The morning of the evidentiary hearing, DeWitt's counsel filed a motion for continuance, which the trial court denied.  Neither DeWitt nor his attorney were present for the evidentiary hearing.  Koslow testified on behalf of Crosscut Capital and presented as evidence bank statements and tax records of WKND.

{¶ 10}  On April 9, 2024, the trial court issued a decision and entry on the July 28, 2023 evidentiary hearing.  The trial court found that DeWitt "failed to assert any facts with particularity demonstrating that [Crosscut Capital] committed fraud" and that his arguments that Crosscut Capital had engaged in money laundering, tax fraud, and other misconduct were speculative and were supported by no evidence.  (Apr. 9, 2024 Decision & Entry at 9.)  The trial court also found that DeWitt failed to offer evidence to demonstrate that Crosscut Capital wrongfully withdrew funds from WKND's account.  The trial court found that the immediate sale of the Property was both necessary and appropriate.  Finally, the trial court granted Crosscut Capital's request for sanctions and concluded that DeWitt's counsel's email to the religious congregation's board members constituted frivolous conduct.  The trial court ordered DeWitt to pay Crosscut Capital $13,668.40 for attorney fees and costs.

{¶ 11}  DeWitt now appeals.

## II. ASSIGNMENTS OF ERROR

{¶ 12} DeWitt's appellate brief sets out the following assignments of error:

[1.] The trial court abused its discretion and incorrectly [denied] Appellant-Defendant's motion for continuance.

[2.] The trial court violated the judicial code of conduct by communicating ex parte with counsel representing Appellant-Defendant.

[3.] The trial court incorrectly attributed the length of time that the property has sat vacant when the trial court itself has taken years to rule on motions and continued hearings thereby delaying the case.

[4.] The trial court erred in imposing sanctions choosing to ignore that an email asking for information from a Board about the Treasurer of Board (William Koslow) who was involved in a federal lawsuit regarding improper payments and a key witness and participant in this case would be proper as a discovery mechanism and to gain information to use even if it were to use to impeach the witness.

[5.] The trial court erred in allowing calculations of attorney's fees for a sanctions in the amount exceeding $13,000.00 for work done to draft and file a protective order without further evidence or having the attorneys who worked on the case testify to that being the proper amount.

[6.] The trial court erred and abused its discretion choosing to use testimony from a lay witness regarding financial documents.

[7.] The trial court abused its discretion by allowing a witness to speculate as to whether a vacant house in an area that that witness is unfamiliar is a plague to the community.

[8.] The trial court erred and abused its discretion when it misinterpreted cash reserves and the operating agreement.

[9.] The trial court abused [its] discretion [by] choosing to ignore the multiple breaches of the Operating Agreement made by the Plaintiff and not looking at the motion to sell the property in the light most favorable to the non-moving party.

[10.] The trial court abused its discretion by deciding that Plaintiff should have the unilateral power to sell the property without any judicial oversight.

[11.] The trial court erred and abused its discretion by signing an entry after this appeal was filed.

## III.  LEGAL ANALYSIS

{¶ 13} While neither party has questioned our jurisdiction over this appeal, our review of Crosscut Capital's complaint and the April 9, 2024 trial court decision has prompted us to consider whether this is a final, appealable order.  Appellate courts have a duty to *sua sponte* examine any deficiencies in jurisdiction.  *Riverside v. State*, 2010-Ohio-5868, ¶ 8 (10th Dist.); *Price v. Jillisky*, 2004-Ohio-1221, ¶ 7 (10th Dist.).

{¶ 14} Under the Ohio Constitution, Article IV, Section 3(B)(2), this court's jurisdiction on appeal is limited to a review of final orders of trial courts.  Final orders are those that "dispos[e] of the whole case or some separate and distinct branch thereof." *Lantsberry v. Tilley Lamp Co., Ltd.,* 27 Ohio St.2d 303, 306 (1971).  A trial court order is a final, appealable order only if it satisfies the requirements in R.C. 2505.02 and, if applicable, Civ.R. 54(B).  *Kellie Auto Sales, Inc. v. Hernandez*, 2020-Ohio-1516, ¶ 13 (10th Dist.).  Pursuant to R.C. 2505.02(B)(1), an order is final if it "affects a substantial right in an action that in effect determines the action and prevents a judgment."  Pursuant to R.C. 2505.02(B)(2), an order is final if it "affects a substantial right made in a special proceeding or upon a summary application in an action after judgment."  An order may also be final under R.C. 2505.02(B)(4), which includes as  "a final order":

> (4) An order that grants or denies a provisional remedy and to which both of the following apply:
>
> (a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.
>
> (b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.

{¶ 15} A "provisional remedy" is "a proceeding ancillary to an action, including, but not limited to, a proceeding for a preliminary injunction, attachment, discovery of privileged matter, suppression of evidence, a prima-facie showing pursuant to section 2307.85 or 2307.86 of the Revised Code, a prima-facie showing pursuant to section 2307.92 of the Revised Code, or a finding made pursuant to division (A)(3) of section 2307.93 of the Revised Code."  R.C. 2505.02(A)(3).

{¶ 16} Generally, if a trial court order leaves issues unresolved and contemplates further action, then the order is not a final, appealable order. *State ex rel. Keith v. McMonagle*, 2004-Ohio-5580, ¶ 4, citing *Bell v. Horton*, 2001-Ohio-2593 (4th Dist.). Civ.R. 54(B) provides that, "[w]hen more than one claim for relief is presented in an action whether as a claim, counterclaim, cross-claim, or third-party claim," or when the action involves multiple parties, "the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay." "Thus, in multiple-claim or multiple-party actions, if the court enters judgment as to some, but not all, of the claims and/or parties, the judgment is a final appealable order only upon the express determination that there is no just reason for delay." *In re Estate of L.P.B.*, 2011-Ohio-4656, ¶ 9 (10th Dist.). While recitation of the "no just reason for delay" language is not a "mystical incantation which transforms a nonfinal order into a final appealable order," the language can "transform a final order into a final appealable order." *Wisintainer v. Elcen Power Strut Co.*, 67 Ohio St.3d 352, 354 (1993).

{¶ 17} As we have noted, Crosscut Capital alleged four claims against Dewitt, including breach of fiduciary duty and breach of the operating agreement, as well as its requests for injunctive relief and a declaratory judgment. The trial court's April 9, 2024 decision did not dispose of any of Crosscut Capital's claims. Rather, the decision resolved Crosscut Capital's motion for sale of the Property, Dewitt's combined motion regarding the sale of the Property, Dewitt's motion to compel Crosscut Capital to replace funds in WKND's account, and Crosscut Capital's request for sanctions, which included an award of attorney fees and costs. The trial court granted Crosscut Capital's motion for an order to sell the Property and granted Crosscut Capital's motion for sanctions, ordering Dewitt to pay more than $13,000 for attorney fees and costs.

{¶ 18} An award of Civ.R. 37 sanctions, in this case for frivolous conduct in litigation, is a final order under R.C. 2505.02(B)(2). *Zhong v. Liang*, 2020-Ohio-3724, ¶ 16 (8th Dist.). The granting of the motion to sell the Property is also a final order under R.C. 2505.02(B)(4) as a provisional remedy, as a court-ordered sale is ancillary to the adjudication of Crosscut Capital's claims for breach of fiduciary duty, breach of the operating agreement, injunctive relief, and declaratory judgment, none of which has been fully adjudicated. Further, the granting of that provisional remedy meets the requirements of R.C. 2505.02(B)(4)(a) and (b), because a court-ordered sale of the Property before the

trial court adjudicates Crosscut Capital's claims would not only prevent a judgment in favor of Dewitt as to the disposition of the Property, but it would also deny Dewitt a meaningful or effective remedy on appeal following the trial court's adjudication of Crosscut Capital's claims. We also note that the trial court referenced Civ.R. 54(B) in including the operative words that "[t]his is a final order. There is no just cause for delay." (Apr. 9, 2024 Decision & Entry at 13.) While the April 9, 2024 decision and entry did not dispose of all of Crosscut Capital's claims from its complaint, we find that it is still a final, appealable order in accordance with R.C. 2505.02 and Civ.R. 54(B).

{¶ 19} Having determined that the April 9, 2024 decision and entry is a final, appealable order, we now consider whether Dewitt's brief complies with the requirements of the Ohio Rules of Appellate Procedure and the Local Rules of the Tenth District Court of Appeals.

{¶ 20} Pursuant to App.R. 16(A)(3) and (4), the appellant shall include in their brief "[a] statement of the assignments of error presented for review, with reference to the place in the record where each error is reflected" and "[a] statement of the issues presented for review, with references to the assignments of error to which each issue relates." An appellant is also required to provide "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." App.R. 16(A)(7). Pursuant to App.R. 12(A)(2), an appellate court may " 'disregard an assignment of error presented for review if the party raising it . . . fails to argue the assignment separately in the brief, as required under App.R. 16(A).' " *Morgan v. Ohio State Univ. College of Dentistry*, 2014-Ohio-1846, ¶ 64 (10th Dist.), quoting *Lundeen v. State Med. Bd. of Ohio*, 2013-Ohio-112, ¶ 16 (10th Dist.); *see also* Loc.R. 10(E) ("noncompliance with the Appellate Rules or the Rules of this Court" is "deemed good cause for dismissal of an appeal"). Compliance with the above referenced rules is mandatory.

{¶ 21} It is well-established law that an appellant is required to provide support for their assignments of error with citation to legal authority. *State v. Hubbard*, 2013-Ohio-2735, ¶ 34 (10th Dist.), citing App.R. 16(A)(7) and 12(A)(2). "The burden of affirmatively demonstrating error on appeal rests with the party asserting error." *Lundeen* at ¶ 16, citing *State ex rel. Petro v. Gold*, 2006-Ohio-943, ¶ 51 (10th Dist.), citing App.R. 9 and 16.

Compliance with the above referenced rules is mandatory. A party's failure to comply with App.R. 16 is tantamount to not filing a brief in the first instance. *JP Morgan Chase Bank, N.A. v. Cloyes*, 2021-Ohio-3316, ¶ 13 (10th Dist.), citing *JPMorgan Chase Bank, N.A. v. Allton*, 2014-Ohio-3742, ¶ 6 (10th Dist.), citing *Gomez v. Kiner*, 2012-Ohio-1019, ¶ 7 (10th Dist.), citing App.R. 3(A) and 18(C).

{¶ 22} DeWitt's brief is deficient as to the requirements enumerated above. Despite listing 11 assignments of error, DeWitt does not identify in the record the error on which each assignment of error is based, nor does he offer separate arguments in support of his assignments of error. DeWitt's brief only includes a cursory argument without reference to the assignments of error and with scant citation to pertinent authorities. In the entirety of his argument, DeWitt cites only one case—a non-binding criminal case in which the First District found that the trial court abused its discretion by denying a continuance when it was undisputed that the defendant's counsel was too ill to participate—and one rule—Evid.R. 701, regarding opinion testimony by lay witnesses.

{¶ 23} " 'It is the duty of the appellant, not the appellate court, to construct the legal arguments necessary to support the appellant's assignments of error.' " *Cook v. Ohio Dept. of Job & Family Servs.*, 2015-Ohio-4966, ¶ 40 (10th Dist.), quoting *Bond v. Canal Winchester*, 2008-Ohio-945, ¶ 16 (10th Dist.). *See also Young v. Locke*, 2014-Ohio-2500, ¶ 16 (10th Dist.) ("App.R. 16(A)(7) requires that an appellate brief contain an argument in support of each assignment of error presented for review with citations to the authorities, statutes, and parts of the record on which appellant relies.").

{¶ 24} Because appellant failed to comply with the requirements in App.R. 16, we decline to further address appellant's arguments and dismiss this appeal.

## IV. CONCLUSION

{¶ 25} For the foregoing reasons, we dismiss appellant's appeal.

*Appeal dismissed.*

DORRIAN, BEATTY BLUNT, and BOGGS, JJ., concur.

———————————